BOARD OF INSURANCE COMMISSIONERS OF TEXAS et al. v. ALLIED UNDERWRITERS.

No. 13483.

Court of Civil Appeals of Texas. Dallas.

May 26, 1944.

992

Gerald C. Mann, of Dallas, Grover Sellers, Atty. Gen., and Ardell Williams and Wm. J. R. King, Asst. Attys. Gen., for appellants.

Will G. Knox and Renne Allred, Jr., both of Austin, for appellee.

LOONEY, Justice.

The Board of Insurance Commissioners of the State, joined by the receiver of Texas Mutual Reserve Life Insurance Company, of Tyler (organized under Ch. 7, Title 78, R.C.S., Vernon's Ann.Civ.St. art. 4800 et seq.), sued the Allied Underwriters (organized under Ch. 20, Title 78, said statutes, Vernon's Ann.Civ.St. art. 5024 et seq.) upon two of its fidelity bonds executed on behalf of J. M. May, President, and F. B. May, Secretary of the Insurance Company, as required by Art. 4804, said statutes. The period covered by the J. M. May bond began at twelve o'clock noon October 26, 1938, and ended October 26, 1939. The period covered by the F. B. May bond began at twelve o'clock noon October 25, 1938, and ended October 25, 1939.

These bonds are identical, and the provisions brought under review are these: "First: For any default within the terms of this bond claim may be made against the Surety at any time during the period for which premium hereunder has been paid to it, and for two years thereafter; but notice of such default shall be delivered to the Surety at its Home Office in the City of Dallas, Texas, within ten days after discovery. Second: * * * Third: Claim, if any, shall be subscribed and sworn to by the Employer; showing the items and dates of the losses and delivered to the Surety at its Home Office within three months next after filing notice of discovery. The Surety shall have two months after presentation of claim in which to verify and make payment, during which time legal proceedings shall not be brought against the Surety, nor brought at all after the expiration of two years from the filing of such statement of claim. Fourth: * * * Fifth: * * * This Suretyship shall terminate: (a) upon retirement of the Employee from the service of the Employer or the discovery of loss hereunder.

(b) * * * Sixth: If any limitation herein for giving notice, filing claim or bringing suit is prohibited or made void by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. * * *."

The defenses urged by Allied Underwriters (now in the hands of Will G. Knox, Receiver) will be stated during the discussion. Trial was had before a jury, but when the evidence was closed, the court instructed a verdict for appellee and rendered judgment accordingly, to which appellants excepted, gave notice of and perfected this appeal.

Under the bonds, the obligors were required to pay obligee such direct loss, not exceeding $5,000, the amount named in each bond, as the Insurance Company shall sustain "by any act or acts of Fraud, Dishonesty, Forgery, Theft, Larceny, Embezzlement, Wrongful Abstraction or Willful Misapplication on the part of the Employee * * *". The statute, however, (Art. 4804) requires that such bonds be "conditioned for the faithful performance of their respective duties," in the instant case referring to the President and Secretary of the Insurance Company. It may be true that the acts mentioned in the bonds would constitute bad faith on the part of these company officials, and in that sense not in conflict with the statute; yet it is obvious that the statute covers a wider field and comprehends any act of bad faith, from which losses result, whether or not found within either of the categories named in the bonds. The doctrine seems to be well settled that whatever is included in such a bond, not required by the statute, must be read out, and whatever is required but not expressed in the bond must be read in. It follows, therefore, that any loss sustained by the Insurance Company, by reason of any act of bad faith on the part of its President or Secretary, would be recoverable, although such act may not be found within either of the categories named in the bonds. See 11 C.J.S., Bonds, p. 421, § 40; Lawrence v. American Surety Co., 263 Mich. 586, 249 N.W. 3-6, 88 A.L.R. 535; Western Casualty & Guaranty Ins. Co. v. Board of Commissioners, 60 Okl. 140, 159 P. 655-659-660, L.R.A.1917B, 977.

Among other points of error urged by appellants is that, as the evidence showed

direct losses sustained by the Insurance Company, under each bond, exceeded $5,-000, the trial court erred in refusing appellants' motion for an instructed verdict, and in directing verdict and rendering judgment for appellee.

■ As heretofore stated, appellants base their right to recover on the contention that the President and Secretary of Texas Mutual Reserve Life Insurance Company, colluding and acting together, were guilty of many acts of fraud, dishonesty and bad faith, resulting in losses to the Insurance Company far in excess of the penalties named in the bonds. At least half of appellants' brief is devoted to statements from the record in support of the point of error under consideration, including, among others, a very definite statement to the effect that various named items aggregating $30,777.34 of losses sustained by the company, by reason of the fraud, dishonesty and bad faith of its President and Secretary, stand in the record unrefuted. Neither the correctness of this nor any other statement in appellants' brief, touching bad faith on the part of these officials and losses resulting therefrom, is challenged by the appellee. The record is voluminous; the statement of facts consists of about 600 pages in Q & A form, about 400 exhibits and a large sheaf of original documents; hence as appellee leaves these damaging statements unchallenged, we shall consume no time searching this voluminous record for facts simply to vindicate the accuracy of appellants' unchallenged statements, but, as authorized by Texas Civil Procedure Rule 419, reading: "Any statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by the opposing party," shall accept them as correct, therefore conclude that losses sustained by the Insurance Company, due to the dishonesty and bad faith of its President and Secretary, were in excess of the penalties named in the bond; and further conclude that such acts were of a nature that they could not have been consummated without the collusion and guilty participation of the President and Secretary, hence hold that the bond of each is equally liable for the losses, not to exceed $5,000 on each, unless recovery should be denied for reasons hereafter discussed.

■ On the other phase of the case, that is, in regard to limitation and failure to give notice of claim after discovery, as a condition precedent to the right to maintain the suit, appellant contends that the defaults and bad faith of the company officials causing the losses, occurred between October 26, 1938, and September 8, 1939 (the date the receiver for the Insurance Company was appointed), and within the period for which premiums had been paid on the bonds; that notice of such bad faith and losses resulting therefrom, were discovered by the Board of Insurance Commissioners for the first time October 20, 1941, from the report of V. E. Griffin, Examiner for the Board; that the Board gave appellee notice of the losses and claim October 22, which was later itemized, sworn to and received by appellee November 26, 1941, and suit was filed August 31, 1942, within the two years' period of limitation.

On the assumption that losses under the bonds were first discovered by the Board October 20, 1941, notice of which being given appellee October 22, elaborated, itemized, sworn to and served on appellee November 26, and suit filed August 31, 1942, the provisions of the bonds in our opinion were complied with, and suit filed within the two years' limitation.

Appellee insists, however, that the notice served October 22 was not a claim within the meaning of the first paragraph of the bond heretofore quoted, but merely notice of losses, and that the claim was not made until November 26, more than two years after the period for which premiums on the bonds had been paid; in other words, more than two years after the expiration of the bonds, hence appellants were precluded from prosecuting the suit.

■ We think there are two answers to this contention: In the first place, the notice served October 22, in our opinion, was notice of the claim. The notice reads: "Please consider this official notice of discovery of loss covered under (here the bonds are described)," stating further: "The claim to be prepared and filed on account of the two principals shall be filed against them on account of joint and several violations under the terms of the bonds"; concluding as follows: "In this connection, you are advised that an examiner of this Department in making an examination authorized by the Board of Insurance Commissioners, through its Chairman, discovered and reported losses under the herein described bonds October

20, 1941." This notice was followed by an itemized, sworn statement setting out in detail the losses claimed and the acts of bad faith from which they sprang, served on appellee November 26, 1941.

We do not think the notice can reasonably be construed other than as notice of claim made upon appellee for the losses sustained, and that the itemized statement served November 26 was but a follow-up or continuation of the notice first presented.

In the case of Fidelity & Dep. Co. v. Fidelity Finance Co., Tex.Civ.App., 111 S.W.2d 809-811-814, with reference to a similar situation, this Court said: " * * * the preliminary notice and the final itemized proof required by the contract are simply phases of the 'notice of a claim for damages,' mentioned in the statute, as a condition precedent to recovery, and that both the preliminary notice and the final proof of loss are within the meaning of article 5546." (App. for writ dism.). However, if doubt should exist as to whether the above is a reasonable construction of the provisions of the bonds, it should be resolved in favor of the Board, as bonds such as the ones under consideration, like insurance policies, are construed most strictly against the obligor (see American Ind. Co. v. Mexia Independent School Dist., Tex.Civ.App., 47 S.W.2d 682-685, appeal for writ dismissed; 7 Am.Jur. p. 156, Sec. 210).

■ In the second place: First paragraph of the bonds requires claims thereunder to be made against "the Surety at any time during the period for which premium hereunder has been paid to it, and for two years thereafter * * *", whereas, the statute (Art. 5546), which is controlling, contains no such limitation, but provides simply that the contractual stipulation requiring notice of claim for damages as a condition precedent to the right to sue, must be reasonable and that "Any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void * * *." We think it unreasonable to assume that the Board was required to give notice until the claim was discovered, or, by the exercise of reasonable diligence, could have been discovered. The doctrine seems to be settled that in suits based upon fraud, the statute of limitation does not begin to run until the fraud is discovered, or facts ascertained sufficient to put a person of

ordinary prudence on inquiry, which, if pursued, would have led to discovery. 28 T.J., Sec. 68, p. 153, and the authorities cited. In Dearing v. Lawrence, Tex.Civ. App., 156 S.W.2d 1019-1021, writ refused, the Amarillo Court said that "Undiscovered fraud will prevent the running of the statute of limitation, when the failure to sooner discover it is not the result of a want of proper diligence of the party charging the fraud"; but "limitation begins to run 'from the time the fraud is discovered, or from the time it should have been discovered by the use of reasonable diligence'"; citing Atkins v. Dodds, Tex. Civ.App., 121 S.W.2d 1010-1018-1020. It follows, we think, that as losses under the bonds were not discovered by the Board until October 20, 1941, and thereafter notice of the claim was given appellee October 22 and an itemized sworn statement served November 26, 1941, appellants complied with the law of notice and were entitled to maintain the suit.

■ Appellee also contends that the Board acquired knowledge of the dishonesty and bad faith of the company officials, and of at least a part of the resultant losses, on June 1, 1939, from the written report of its examiner, J. N. Nutt; consequently, the bonds terminated on that date by virtue of the 5th provision heretofore quoted, and further as no claim was filed within two years after the expiration of the period for which premiums had been paid, appellants were precluded from suing for the losses; and, the suit not having been filed until August 21, 1942, the alleged cause of action was barred under the two years' statute of limitation.

The written report of Examiner Nutt referred to covered the year 1938, but was not filed with the Board until June 1, 1939. In the main, the report seems to have been based upon, and simply reflected the records and books of the Insurance Company kept by and under the supervision of its President and Secretary. The passages in Nutt's report from which knowledge or notice of any of the losses alleged to have been sustained could have been ascertained will be quoted: First, with reference to the illegal payment of traveling expenses, Nutt's report recited that: "The records reveal that the President received the amount of $14,010.89, which includes traveling expenses of $4,714.49 * * *. Objections have been made by your Department to the practices of paying personal

expenses of officers without an itemized statement of the disbursement, and the practices have been discussed in previous examination reports. It would appear to your Examiner that the President has made a gesture to cooperate with your Department in this respect, although the statements submitted for inspection merely segregate the expenditures and fail to reflect proper vouchers and substantial details of the nature of the expenses."

This language, in our opinion, simply called attention to an irregularity; no hint of concealment, dishonesty, or bad faith on the part of the bonded officials, or any resultant loss to the company was mentioned; on the contrary, the report stated that the President of the company made a gesture to cooperate with the Department in the respect mentioned. On the other hand, Griffin's report, filed October 20, 1941, reveals payments for expenses of over $7,000, disbursed by checks of $100 or more, in disregard of the provisions of Art. 4731, R.C.S., and in this connection, Griffin testified that he found no minutes supporting or authorizing the disbursement of traveling expenses, or did he find any accounting for moneys advanced to or drawn by J. M. May, President.

■ Appellee also contends that Nutt's reference to a real estate transaction was sufficiently revealing to put the Board upon notice of bad faith on the part of these company officials and the loss resulting therefrom. In regard to this matter, Nutt's report reads: "Subsequent to the date of this examination, the Company has disposed of three parcels of its real estate to the Texas Reserve Life Company under the management of J. M. May. The book value of the properties sold was $21,504.26 on December 31, 1938, and the total consideration received therefor was $6,500.00, or a loss of $15,004.26. In view of the above, your Examiners have set up a liability of $15,004.26 as a reserve for the real estate losses."

It will be observed that the only loss mentioned was a book loss; no hint was made by Nutt of dishonesty or double dealing on the part of the bonded officials, or that they were personally interested in the real estate transaction. Although the report states that the vendee company was under the management of J. M. May, it does not appear that he was a stockholder or personally interested in the deal, whereas, Griffin's report, filed October 20, 1941, revealed that on January 20, 1939, J. M. May and F. B. May, bonded officials of the Insurance Company, purporting to act in its name, conveyed the real estate in question to the Texas Reserve Life Company, a finance concern, J. M. May being its President and F. B. May its Secretary; that together they owned a controlling interest in the company, and further, that on February 8, 1939, the vendee company, through these said officials, obtained from the Tyler State Bank & Trust Company a loan of $7,000 on the property, and that, about that date, the Insurance Company received $6,500, being the recited consideration for the conveyance. The fact that the Trust Company loaned $7,000 on the property clearly indicates that it had an actual value in excess of the amount loaned, thus revealing a loss sustained by the Insurance Company due to the double dealing and bad faith of its bonded officials, and, apparently, in direct violation of Art. 4727, R.C.S.

■ Being a written instrument, the meaning of Examiner Nutt's report is a question of law for the court, and not one of fact for the jury. We therefore hold that the report was not sufficiently revealing to discover to the Board any loss due to dishonesty or bad faith on the part of the bonded officials, which was not even hinted in the report, nor was it sufficient to put the Board upon inquiry. The notices required by both the statute (Art. 5546) and provisions of the bond were in regard to the existence of a claim for losses due to dishonesty and bad faith, and not merely as a warning to prevent possible future losses. Appellee's contentions are overruled; and appellants' points of error sustained; hence the judgment below is reversed and judgment here rendered for appellants against appellee as prayed, for the full amount of each bond.

■ However, if it can be correctly said that Examiner Nutt's report was sufficient to reveal to or put the Board on notice of a part of the losses claimed, as contended by appellee, the result would not be changed, because, in such event, the only items of losses affected would be the items of traveling expenses, the loss incident to the real estate transaction, and losses accruing after June 1, 1939. Other losses accruing under the provisions of the bonds during the year 1938 and during

1939 up to June 1, as revealed by Griffin's report, would not be affected. The judgment below is reversed and judgment here rendered for appellants.

Reversed and rendered.