**UNITED STATES of America,
Appellant,**

v.

**Walter H. BRYAN and Riverside Bank of Jacksonville, Claimants of One 1957 Ford Wrecker-Truck, Serial No. F80F7H13614, Appellees.**

No. 17240.

United States Court of Appeals Fifth Circuit.

April 16, 1959.

E. Coleman Madsen, Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Southern District of Florida, Jacksonville, Fla., for appellant.

John W. Muskoff, W. Gregory Smith, Jacksonville, Fla., for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment entered on a directed verdict in favor of the claimants of a tow truck libeled by the United States. The single question presented for our consideration is whether the United States made a sufficient showing the vehicle was being used at the time of its seizure so as to be subject to forfeiture under the provisions of section 7301(e) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7301(e). The lower court held that it had not. We conclude that this was error.

The appellees submitted the case here without argument and without filing a brief. The case was tried in the district court before a jury, but at the end of the government's case the district court granted a directed verdict in the claimants' favor on the ground that the appellant's evidence was not sufficient to prove intent to violate the internal revenue laws. The court stated that "the inference is equally strong, if not stronger" that neither the owner nor the driver of the vehicle had such intent.

On a motion for directed verdict, the evidence must be viewed in the light most favorable to the party opposing the motion, giving him the benefit of every favorable inference which may be fairly drawn. Atlantic Greyhound Corp. v. Crowder, 5 Cir., 177 F.2d 633. Whenever the evidence is such that fair minded men might draw differing inferences therefrom and might reasonably disagree as to what the verdict should be, the motion must be denied. American Fidelity and Cas. Co. v. Drexler, 5 Cir., 220 F.2d 930.

With these fundamental rules in mind, we briefly summarize some of the evidence and inferences which the jury could reasonably have drawn therefrom.

On November 18, 1957, at 2:00 A.M., two troopers of the Weight Division of the Florida Highway Patrol were driving on Florida State Highway 23 north of Macclenny, Florida, and were looking for overweight trucks which might be attempting to wait out a road block in

Macclenny. They observed a 1946 Chevrolet van truck parked at a truck stop about two miles north of Macclenny. This truck was formerly owned and used by a linen service company, but had since been sold and had its signs painted over so that its panels were blank and without identifying trade signs. (This is the van which was being towed by the tow truck when they were both seized by the law enforcement officers.)

On the afternoon of November 18, at about 3:45 P.M., the state troopers observed the tow truck traveling west toward Macclenny on U.S. Route 90 from Jacksonville, Florida. At about 4:40 P.M., a local sheriff passed the tow truck, which had apparently passed through Macclenny on Route 90 and turned north on Florida State Road 127, which runs parallel to and west of Highway 23.

At about 6:45 P.M. on this same day, the state troopers observed the tow truck pulling the van coming south on Highway 23 in Macclenny and turning east toward Jacksonville on Route 90. The troopers followed the trucks and observed that the rear tires on the van, the front tires of which were suspended above the ground by the tower, were mashed down quite flat, indicating that the truck might be very heavily loaded. The officers stopped the trucks and questioned the driver of the tow truck. The doors to the van were padlocked shut, but the officers were able to detect through a crack in the door that the truck was loaded with bags of sugar. Upon making this discovery they notified internal revenue liquor agents and waited until they came to take custody of the trucks.

In the cab of the wrecker the troopers found a young man named Grady Allen Shad. Shad told them he had been hitchhiking and had been picked up just north of the Florida-Georgia state line on the Georgia extension of Route 23. This statement conflicted with the statement of the driver of the wrecker, Rhodes, who stated he picked up Shad in Florida. Shad said he had been cutting pulpwood in the woods all day, but the officers testified that his hands and clothes were clean.

Rhodes told them that when he picked up the van there was no one around it and that he had simply gone after the truck as a result of a telephone call to the garage operated by claimant Bryan in Jacksonville. However, a new denim jacket which fitted Shad perfectly and which bore the same brand name as the new denim pants Shad was wearing was found in the cab of the van-truck. In addition, the telephone call to claimant's garage was shown to have been made by Shad.

Rhodes told the officers that he had picked up the van on Florida State Road 2 which runs east and west north of U.S. Route 90, but the aforementioned sheriff testified that he had driven along that road just before he passed the wrecker going north on Road 127 at 4:40 P.M., and he testified that he had not seen the van anywhere along that route.

The telephone call to claimant's garage was placed by Shad from a pay station in Statenville, near Valdosta, Georgia, which is to the northwest of the point in Florida where Rhodes claimed to have picked up the truck. Claimant Bryan told the investigating officers that he did not know who placed the call, but the telephone company's records show that it was a collect call and that the call was accepted by someone at the garage, and according to the statements attributed to Bryan, it was accepted either by Bryan or his wife, and in either case he spoke to the person making the call.

When the federal officers arrived at the place where the trucks had been halted, they lowered the front wheels of the van to the ground and started its engine running. Several of the officers testified that the truck was in good running condition at that time, and one of the federal officers drove the truck, which was loaded with 10,000 pounds of sugar, all the way to Jacksonville (a distance of approximately twenty-eight miles) under its own power, thus supporting the Government's claim that the tow truck's services were

not required because of a breakdown of the van.

There is no dispute about the fact that the libeled wrecker was providing the motive power to move the loaded van and was thus being used to "transport" the contraband contents of the truck.

The United States instituted this proceeding under 26 U.S.C.A. § 7301. The pertinent portions of that statute read as follows:

"(b) Raw materials.—All property found in the possession of any person intending to manufacture the same into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax, may * * * be seized and shall be forfeited to the United States.

*    *    *    *    *    *

"(e) Conveyances.—Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment of property described in subsection (a) or (b) may also be seized, and shall be forfeited to the United States."

The allegations of the libel which are of pertinence were the following:

"Fourth: That the said 1957 Ford Wrecker-Truck, Serial No. F80F7H13614 when seized as aforesaid was being used to transport and for the deposit and concealment of 10,000 pounds of sugar which sugar was intended to be used in the manufacture of distilled alcoholic spirits on which the tax imposed by the laws of the United States had not been paid, nor were the same to be paid, with intent to defraud the United States of the tax due on said distilled spirits."

■ The United States was required to prove every essential allegation of this libel by a preponderance of the evidence, but it was not required to prove them beyond a reasonable doubt. Anderson v. United States, 5 Cir., 185 F.2d 343.

■ It is not entirely clear whether appellant intended to allege that the transportation was carried out with intent to defraud the United States, that is, with knowledge of the facts, but the parties and the trial court all correctly assumed that such intent was a prerequisite to forfeiture of the tow truck.

■ There was ample evidence to demand that the issue be submitted to a jury. Shad's possession of the sugar with illegal intent was strongly suggested by the evidence. Knowledge of the intent to defraud could be inferred from the evidence and otherwise. Anderson v. United States, 5 Cir., 185 F.2d 343; Busic v. United States, 4 Cir., 149 F.2d 794. Here was a large quantity of sugar in an unmarked, padlocked truck which the jury could infer was in Shad's possession although he denied it. It was first seen on the road at an odd hour of the day and thereafter seen in the course of being towed approximately ninety miles despite the fact that it was able to proceed under its own power and was apparently in good running condition. In the absence of any exculpatory evidence, these and other proven circumstances permitted an inference of guilty intent.[1] Likewise, Grady Shad's placing of the telephone call to claimant's garage, his presence in the tow truck, and other facts connecting him with the van, including his inconsistent testimony, clearly indicated that he was in possession of the van and its contents and had the requisite illegal intent. These same equivocal facts, including the inference that could be drawn from the conflicts in testimony, were sufficient to authorize a jury to find that claimant or his driver shared the knowledge and intent of Shad.

The order appealed from must be set aside and the case remanded for a new trial.

Reversed and remanded.

---

1. Compare United States v. One 1955 Mercury Sedan, 4 Cir., 242 F.2d 429;

United States v. 2265 One-Gallon Paraffined Tin Cans, 5 Cir., 260 F.2d 105.