**UNITED STATES of America,**
**Libellant,**

v.

**ONE 1960 FORD 4–DOOR GALAXIE SEDAN, Motor No. OU4X137113 (Hooper Enloe Denton and Hamblen Motor Company, Intervenors).**

**Civ. A. No. 1486.**

United States District Court
E. D. Tennessee,
Northeastern Division.

March 17, 1962.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for libellant.

James M. Meek, William E. Badgett, Knoxville, Tenn., for intervenors.

NEESE, District Judge.

This is a libel of information by the United States to enforce *in rem* the forfeiture of an automobile belonging to the intervenor Hooper Enloe (Dick) Denton in accordance with 26 U.S.C. § 7302.

It is alleged that the vehicle offended by being used " * * * to transport * * property which is intended to be used in the * * * packaging of property described in subsection (a)". 26 U.S.C. § 7301(e). Said subsection (a) provides for the forfeiture to the United States of: "Any property * * * in respect whereof, any tax is imposed by this title which shall be found in the possession or custody or within the control of any person * * * for the purpose of being sold * * * in fraud of the internal revenue laws, or with a design to avoid payment of such tax * * *." 26 U.S. C. § 7301(a).

There is little dispute about the facts: Prevatte, a paid informer of the Alcohol and Tobacco Tax Unit of the Treasury Department, had established an apparently legitimate business relationship with the intervenor Denton relative to Prevatte's leasing a truck stop Denton then had under construction. After gaining Denton's confidence, Prevatte then revealed to Denton that he was in the business of transporting moonshine whiskey into another state and arranged to purchase a load of such illicit spirits from Denton's neighbor, Albert ("Sharkey") Costner. Bryant, an investigator for the Alcohol and Tobacco Tax Unit falsely represented himself to Denton as a driver in Prevatte's pretended illicit whiskey hauling activities. Both Bryant and Prevatte became guests in Denton's home and discussed their pretended and intended activities with the intervenor Denton on that and other occasions.

During these conversations, Denton was told by Prevatte that " * * * he had been hauling some moonshine liquor

for a living * * *," and Denton testified he assumed that Bryant and Prevatte were engaged in hauling whiskey.

On September 6, 1960, according to Denton's own testimony, elicited by his own attorneys, Prevatte had "* * * come back for some more whiskey and * * * I understood him to say he forgot to bring some lunch pokes * * * and asked if I would go get them. I said, 'Why don't you go get them yourself?' Then he said, 'My car has been seen in and out of here, and I don't want nobody to see me.' I said, 'Well, I can go get some * * *'. He said he wanted $1.50 worth of lunch pokes. He * * * gave me two dollars and told me to keep the other fifty cents for gasoline. I went to the store, * * * and I brought them back and gave them to him. They put them in the car and went off with them."

The testimony of the Government's agents relative to the "lunch pokes" was to the effect that Prevatte explained his failure to bring the sacks with him for fear the purchase of such a quantity of sacks might arouse suspicion as to their intended use, whereupon Denton volunteered to get the sacks and was quoted as saying: "They'll know d—— well what I'm gonna use 'em for."

The Court finds that the intervenor Denton purchased the paper bags to accommodate Prevatte with whom Denton was negotiating a lease contract; that Denton was aware that the bags were to be used as outer packaging for untaxpaid whiskey in violation of the internal revenue laws; that Denton was aware of the design or intention of Costner to avoid payment of the tax on distilled spirits; and that Costner intended to defraud the Government of taxes and harbored a design to avoid payment of the whiskey tax.

Bryant testified that the same paper bags were removed from the seized vehicle by Prevatte, who took them to the Costner home where they were used for outer packaging of contraband whiskey. Denton saw untaxpaid whiskey being poured into half-gallon jugs and the jugs being sacked in six-pound bags in Costner's residence the same day he had purchased the sacks, and even demonstrated to agent Bryant a quick and easy way to open the bags which would expedite the packaging.

There was also testimony by the A.T.U. investigator Bryant, denied by Denton, that when Prevatte inquired who should be paid for the whiskey, Denton replied: "Pay me, it's my d—— whiskey."

Subsection (e), 26 U.S.C. § 7301, was amended in 1958, and the intervenor Denton suggests this is a case of first impression on the question of whether the sacking of whiskey jugs in grocery bags is "packaging" within the meaning of the subsection cited. The Court disagrees. Such nicety of construction does not relieve this offending vehicle from forfeiture. The question, rather, is whether the seized vehicle was used by Denton as an active aid to Costner in violating the revenue laws. United States v. General Motors Acceptance Corp. (1956) C.A., 5th Cir., 239 F.2d 102; 104.

■■ Forfeiture is a method of civil punishment imposed by the lawmaking power to restrain, and aid in the prevention of, an offense. Statutes authorizing the forfeiture of property ordinarily used for a legal purpose are drastic in their operation and are strictly construed. United States v. One 1936 Model Ford, 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1249, but statutes to prevent fraud on revenue laws are enacted for the public good and to suppress a public wrong and will not be given a strained interpretation favoring the intervenor but will be construed fairly and reasonably to effectuate the legislative intention. United States v. Ryan, 284 U.S. 167, 172, 52 S.Ct. 65, 67, 76 L.Ed. 224.

■ Costner's intent to defraud the Government of tax is inferred from the evidence. United States v. Bryan (1959) C.A., 5th Cir., 265 F.2d 698, 701. The evidence shows that Costner was engaged in an illegal business, and the circumstances surrounding the use of the seized automobile raise the inference that the sacks were used as intended as an active aid to Costner's illicit whiskey dealings. Wingo v. United States, C.A., 5th Cir., 266 F.2d 421, 422–423; United

844

States v. General Motors Acceptance Corp., supra.

In another situation an appellate court affirmed a district court's order of forfeiture of a 1956 Ford automobile used to haul gasoline to a 1946 Plymouth vehicle which had run out of gasoline while being used to haul nontaxpaid whiskey. Weathersbee v. United States (1958) C.A., 4th Cir., 263 F.2d 324.

In the case at bar it was Denton's automobile, rather than Costner's, which was used as an active aid to Costner in violating the revenue laws. United States v. General Motors Acceptance Corp., supra. Another supporting case involved the seizure of an automobile which had been used to transport two gasoline pumps which were afterward used in the operation of an illicit distillery. United States v. One 1955 Mercury Sedan (1957) C.A., 4th Cir., 242 F.2d 429, 432. Thus, the fact that six-pound paper bags have a far wider use than as outer packaging for illicit liquor is no bar to this forfeiture. United States v. One Chevrolet, etc. (1950), D.C.Colo., 91 F.Supp. 272.

The Court finds as a fact from the preponderance of the evidence that the vehicle seized herein was intended to be used, and was used, by Denton as an active aid to Costner's illegal and fraudulent purposes.

The Congress intended to aid the enforcement of revenue laws relating to intoxicating liquors by providing for forfeiture in any case of intended violation of those laws. United States v. One 1950 Ford, Half-Ton Pickup Automobile Truck, C.A., 6th Cir., 195 F.2d 857, 859. The present interpretation of the statutes under which the Government is proceeding is fair and reasonable in effectuating such intention of Congress. United States v. Ryan, supra.

Denton's co-intervenor, the seller of the seized automobile, offered no proof and is entitled to no remission on this record.

This opinion will serve as the required findings of fact and conclusions of law, and the United States Attorney will submit for approval a judgment of forfeiture.