280

**ROUND ROCK INDEPENDENT SCHOOL DISTRICT,**
Appellant,

v.

**The FIRST NATIONAL INSURANCE COMPANY OF AMERICA,** American Empire Insurance Company of South Dakota, and the Assurance Company of America, Appellees.

No. 20163.

United States Court of Appeals
Fifth Circuit.

Nov. 1, 1963.

Rehearing Denied Dec. 18, 1963.

Charles F. Herring, Austin, Tex., David R. Sapp, Fox & Fondren, Taylor, Tex., Herring & Werkenthin, Austin, Tex., for appellant.

Jack Sparks, Brown, Sparks & Erwin, Austin, Tex., for appellee First Nat. Ins. Co. of America.

Coleman Gay, Gay & Meyers, Austin, Tex., for appellees American Empire Ins. Co. of South Dakota and The Assurance Co. of America.

Before HUTCHESON, RIVES and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

This action is by Round Rock Independent School District against three different insurance companies. The policies sued on insured Round Rock against loss by fire and other hazards, including explosion. Round Rock claimed that two of its school buildings were damaged as a result of blasting operations in the construction of a nearby highway. A blasting log introduced by the insurance companies showed 139 explosions for the period commencing January 12, 1959 and running through July 31, 1959. The school superintendent testified that the blasting "continued through the summer and into the earlier part of the school year for the '59–'60 year," which began in September 1959.

The first notice to the insurance companies was given by letters dated November 12, 1959, each reading:

"We wish to make application for explosion damages on two of our buildings listed with you as Round Rock Grammar School Building, and Round Rock High School Building.

"Considerable damage has been caused to these buildings by *explosions* or blastings by Ruby Construction Co. under contract to Texas Highway Department, Austin, Texas.

"Please have an adjuster visit us at your earliest convenience."

Each of the insurers conducted an investigation under a non-waiver agreement signed by Round Rock, and thereafter denied liability under its policy.

The insurance companies contended that the school buildings had not been damaged by the blasting, and further that Round Rock had failed to comply with the provisions in each of the policies requiring the insured to "give immediate notice to this Company of any loss" and "within 91 days after the loss, unless such time is extended in writing, the insured shall render to this Company a proof of loss signed and sworn to by the insured." The case was tried to a jury in the district court and submitted upon special issues. The jury found that one of the school buildings had been damaged by blasting in 1959 in the amount of $40,000.00, and the other in the amount of $16,000.00. In response to special issue No. 5, the jury found that Round Rock gave the insurance companies "immediate notice" [1] of the loss to its school buildings from blasting. In response to other special issues, the jury found that each insurance company waived the filing of a formal proof of loss.

After verdict and on motion of the insurance companies, the district court entered judgment for the defendants notwithstanding the verdict upon a finding that, "as a matter of law, the plaintiff herein failed to give the defendants and each of them notice of loss within a reasonable time as required by the policies of insurance sued on and therefore finds that as a matter of law the defendants and each of them are entitled to judgment herein."

The issues presented on this appeal are:

1. Was there substantial evidence to support the jury's finding that Round Rock gave the insurance companies immediate notice of the loss to its school buildings from blasting?

2. If not, then were the provisions requiring the insured to "give immediate notice to this Company of any loss" void as being in violation of the following part of Article 5546, Vernon's Annotated Texas Civil Statutes: "No stipulation in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable. Any such stipulation fixing the time within which such notice shall be given at a less period than ninety days shall be void * * * "?

3. Was there substantial evidence to support the jury's findings as to each insurance company that it waived the filing of a formal proof of loss?

*1 and 2.* The rule by which the court is governed in ruling on a motion for judgment n. o. v. was well stated in United States v. Bryan, 5 Cir. 1959, 265 F.2d 698, 699:

"On a motion for directed verdict, the evidence must be viewed in the light most favorable to the party opposing the motion, giving him the benefit of every favorable inference which may be fairly drawn. Atlantic Greyhound Corp. v. Crowder, 5 Cir., 177 F.2d 633. Whenever the evidence is such that fair-minded men might draw differing inferences therefrom and might reasonably disagree as to what the verdict should be, the motion must be de-

1. Defined in the instruction as "notice within a reasonable time under all the facts and circumstances of this case."

nied. American Fidelity and Cas. Co. v. Drexler, 5 Cir., 220 F.2d 930."

With that rule in mind, we proceed to state the evidence in its light most favorable to Round Rock. The blasting on the highway began in January 1959 and continued throughout the summer and into the early fall. According to the expert testimony, "when the concussion occurs, that is when the crack appears," though "there is delayed cracking as an after-effect; the secondary cracks might occur weeks after the initial cracking has been done. But this particular type of blasting crack, it occurs simultaneously with the blasting, whenever that was. * * * The secondary cracks might appear weeks later, or perhaps months later." Under date of February 9, 1959, the school superintendent wrote a letter to the highway contractor in which he stated: "We feel that your attention should be called to the fact that the extra heavy blasting is causing damage to our school buildings. It would be appreciated if we could have information as to responsibility in case we sustain too great injury. Yours very truly, Noel Grisham, Superintendent, Round Rock Independent School District."

The school superintendent admitted that by that date, February 9, 1959, he observed "slight damage," but explained the letter as follows: "We were more anxious to be sure that we did not find ourselves negligent in caring for the Round Rock School properties, and to be precautious. It was a matter of being precautious more than anything."

The school superintendent admitted that as early as February 18, 1959 he had written a letter about the explosion damage to Attorney Tom Reavley. That letter is not in evidence, but Mr. Reavley's reply is dated February 18, 1959, and reads as follows:

"I have your letter about the damage to two of the school buildings caused by blasting in the construction on the nearby highway.

"Their liability would depend upon whether or not they were negligent in using their dynamite in the way that they did under the circumstances. I certainly think that every reasonable attempt should be made to get reimbursement for the school district.

"You will need to get all the information that is available including your exact damages, any damage to adjacent Round Rock buildings, either at the same time or at an earlier time, and where the contractors were and the manner in which they set these charges off—if this information can be obtained (possibly from some people working on the job).

"Let me know if I can help you."

That letter also the school superintendent explained "as a precautionary measure."

The school superintendent further admitted that Attorney Reavley's letter was discussed at the school board meeting of March 12, 1959, and his testimony continued:

"Q. So both the school board and you had knowledge of this damage at least by the March 12, 1959, school board meeting?

"A. Yes, but we had no intention of making claim on the minor hairline cracking or the small cracking we saw.

"Q. You didn't see fit at that time to notify the insurance companies of the damage?

"A. No, we didn't intend at that time to make a claim on small damage.

"Q. But it was sufficiently important for you to write both the contractor and the attorney for advice?

"A. As a precautionary measure in case we did sustain a damage beyond the minor stage.

"Q. Now, in May of 1959 you were aware, were you not, of damage to your office caused by a

crack and by plaster coming out of the crack?

"A. Yes.

"Q. You knew of that at that time?

"A. Yes.

"Q. Did you think that was also a minor damage?

"A. We were willing to sustain that damage without making claim against the insurance company.

"Q. Well, you did not make claim against the insurance companies until your November 12, 1959, letter to them.

"A. Yes. This was the damage that we had not perceived any time prior to the fall."

The President of the School Board testified that a number of inspections or examinations of the damages to the buildings were made in and prior to May 1959, that he was away during the summer, and that when he returned in the fall he found the damages much more extensive.

The jury's findings on special issues 11–A and 11–B are as follows:

"SPECIAL ISSUE NO. 11–A.

"On what date, if any, do you find from a preponderance of the evidence that the Board of Trustees of Round Rock Independent School District concluded that blasting was causing damage to its high school and elementary school buildings?

"Answer by stating the date you so find, if any.

"Answer: September 10, 1959

"SPECIAL ISSUE NO. 11–B.

"On what date, if any, do you find from a preponderance of the evidence that the Board of Trustees of Round Rock Independent School District by the use of reasonable diligence should have concluded that blasting was causing damage to its high school and elementary school buildings?

"Answer by stating the date you so find, if any.

"Answer: May 14, 1959."

Round Rock insists that the district court erred in overruling its motion to disregard the jury's findings on these two special issues, "inasmuch as such special issues inquire only as to when appellant concluded, or should have concluded, that blasting *was causing damage* to its school buildings and are not determinative as to when appellant's *loss* occurred."

It becomes important, therefore, to determine the exact meaning of the requirement of "immediate notice." To repeat, that requirement is that, "The insured shall give immediate notice to this Company of *any* loss." (Emphasis supplied.) Significantly that phrase is immediately followed by the phrase "protect the property from further damage." Later in the same paragraph comes the requirement of "proof of loss": "Within ninety-one days after the loss, unless such time is extended in writing, the insured shall render to this Company a proof of loss signed and sworn to by the insured * * *."

In Fidelity & Deposit Co. v. Courtney, 1902, 186 U.S. 342, 347, 22 S.Ct. 833, 835, 46 L.Ed. 1193, the Supreme Court said:

"The object of the notice was one of the circumstances to be considered. If it was to enable the defendants to take steps for their protection that must necessarily be taken soon after the occurrence of the fact of which notice was to be given, a briefer time would be required to render the notice immediate according to the understanding of the parties than would be required if the object could be equally well attained after considerable delay."

The Texas cases recognize distinctions in the requirement of immediate notice, and in the applicability of Art. 5546, Vernon's Annotated Texas Civil Statutes, according to the type of insurance involved. Commercial Standard Ins. Co. v. Harper (1937) 129 Tex. 249, 103 S.W. 2d 143, 145. The requirement is differ-

ent where the notice is of an event or occurrence as in accident liability[2] and theft[3] policies, and where the notice is of a loss as in fidelity bonds[4] and crop insurance.[5]

Only one Texas case has been cited to us involving a policy insuring against fire and explosion. Without much discussion, that case states: "No notice of loss was required, because the provision with reference thereto was void under article 5546, R.S. 1925." Universal Automobile Ins. Co. v. Morris Finance Corp., Tex.Civ. App.1929, 16 S.W.2d 360, 362.

■ The requirement of "immediate notice of any loss" is much closer to the requirements in the fidelity bond and crop insurance cases (notes 4 and 5, supra) than to those in the accident liability and theft cases (notes 2 and 3, supra). If we were writing on a clean slate we might decide the question differently, but constrained as we are by the Erie doctrine, we are bound to hold that the best evidence of the Texas law as presently stated in the decisions of the courts of that State is that the requirement of "immediate notice of any loss" is void under Article 5546, Vernon's Annotated Texas Civil Statutes.

■ 3. Admittedly, no proofs of loss were filed with any of the three insurance companies. The requirement of proof of loss may, of course, be waived.[6] The question is whether there was any substantial evidence that such requirement was in fact waived. As early as 1892, the Texas Supreme Court declared:

"It is a well-known principle in this class of cases that the acts relied on as constituting a waiver should be such as are reasonably calculated to make the assured believe that a compliance on his part with the stipulations providing the mode of proof of loss, and regulating the appraisement of the damage done, is not desired, and that it would be of no effect if observed by him."

Scottish Union & Nat. Ins. Co. v. Clancey (1892) 83 Tex. 113, 18 S.W. 439, 440, 441. We are left in no doubt that that is still the law of Texas. As said in State Farm Automobile Ins. Co. v. Hinojosa, Tex.Civ.App.1961, 346 S.W.2d 914, 916:

"For the evidence to raise an issue of waiver, it must warrant an inference that appellant 'with full knowledge of the facts' did or failed to do something which is inconsistent with an intention to exercise its rights. New Amsterdam Casualty Co. v. Hamblen, 144 Tex. 306, 190 S.W.2d 56, 59."

In Galveston County v. Hartford Fire Ins. Co., Tex.Civ.App.1950, 231 S.W.2d 684, the insured did not report the loss by theft until five months after its occurrence. The insurer nonetheless investigated the claim *without* a non-waiver agreement, and denied liability without mentioning the delayed notice or the

2. Yorkshire Indemnity Co. of New York v. Roosth & Genecov Pro. Co., 5 Cir. 1958, 252 F.2d 650, 653; Trinity Universal Insurance Company v. Weems, Tex.Civ.App.1959, 326 S.W.2d 302; State Farm Mutual Automobile Ins. Co. v. Hinojosa, Tex.Civ.App.1961, 346 S.W.2d 914, 915; Allen v. Western Alliance Insurance Co., Tex.1961, 349 S.W.2d 590, 593.

3. Commercial Standard Ins. Co. v. Harper, 1937, 129 Tex. 249, 103 S.W.2d 143, 145.

4. Citizen's Guaranty State Bank v. National Surety Co., Tex.1924, 258 S.W. 468, 469; Western Indemnity Co..v. Free and Accepted Masons, Tex.1925, 268 S.W.

728, 729; Austin v. Aetna Casualty & Surety Co., Tex.1927, 300 S.W. 638; Fidelity & Deposit Co. of Maryland v. Fidelity Finance Co., Tex.Civ.App.1937, 111 S.W.2d 809, 811, 812; Board of Insurance Com'rs of Texas v. Allied Underwriters, Tex.Civ.App.1944, 180 S.W.2d 990, 994.

5. National Liberty Ins. Co. v. Herring Nat. Bank, Tex.Civ.App.1939, 135 S.W.2d 219, 224.

6. Chicago Fire & Marine Ins. Co. v. Herring, Tex.Civ.App.1932, 54 S.W.2d 236; Fidelity & Guaranty Ins. Co. v. Super-Cold Southwest Co., Tex.Civ.App.1949, 225 S.W.2d 924, 927.

failure to make proofs. The Texas court held that there had been no waiver of the provision requiring proofs of loss within 90 days from the date of loss.

In the present case non-waiver agreements were signed with each of the insurance companies, dated January 6, 1960. They referred to the claimed explosion damage as having occurred from December 1958 to October 1959. The Superintendent of Round Rock testified that between November 12, 1959, and January 6, 1960, the adjuster for American Empire Insurance Company came to see him, that he accompanied him through the school buildings and looked at the various cracks in the buildings and on the interior walls and the foundations, that this adjuster went over the buildings "no fewer than six times," that—

"A. I explained the relationship, that we were customers and they were our counsel and representatives, and that we should be told to do anything that was necessary and required in effecting a claim.

"Q. What did Mr. Payne tell you, if he did tell you anything, that you should do?

"A. I can't recall exactly, but he didn't require us to do anything or ask us to do anything that we did not do. We didn't refuse to do anything."

The superintendent further testified that the adjuster for Assurance Company of America came to see him either the last part of November or in December, but that "there was a lack of very much conversation, I believe."

"That it was in the presence of Jay Barnes at the time we were told that the building was in very bad condition, and as I recall, I did say to Mr. Winn in Mr. Barnes' presence that we would want to be counseled with regard to our responsibilities in making proper claims.

"Q. (By Mr. Herring) [appellant's attorney] And that conversation was had with Mr. Winn?

"A. Yes.

"Q. Did Mr. Winn advise you of anything that you needed to do in behalf of the school district?

"A. No."

The superintendent further testified that "toward the latter part of our conferences with adjusters," the adjuster for First National Insurance Company came to see him and—

"Q. Did you have any conversations with him or discussions with him of any kind?

"A. Yes. We made a tour of the buildings, discussed the damage, and I asked to be notified of any obligation that we had in making claim.

"Q. Did he advise you that there was anything you needed to do in connection with the claim?

"MR. SPARKS [attorney for First National Insurance Co.]: We're going to object to that on the ground that there is no duty on the insurance company to advise them with reference to making a claim or proof of loss.

"THE COURT: I'll overrule that.

"Q. (By Mr. Herring) Did he advise you that there was anything you needed to do to perfect your claim?

"A. No. To clarify that—did I answer no to that? I can recall that we were told to get the estimates for the building damage."

The non-waiver agreement under which First National investigated the loss clearly provided "that no action heretofore or hereafter taken by said Company shall be considered as a waiver * * *." Assurance Company of America's non-waiver agreement provided "that anything done or to be done * * * shall not waive * * *." The non-waiver agreement of American Empire, then Queen City Insurance Company, was not specific as to past conduct, but provided simply that "Queen City Insurance Company is not waiving any

286

rights it may have * * *." Under any view of the law there appears to be no substantial evidence that Assurance Company of America or First National Insurance Company ever waived the requirement as to proofs of loss. As to American Empire and, indeed, as to all three insurance companies, there was no evidence of any conduct which would amount to a waiver of the furnishing of proofs of loss as to any loss occasioned more than 91 days theretofore.

 If all of the explosions did not occur prior to July 31, 1959, at least 139 did. The jury was making no overstatement in its finding 11–B, that the School Board by the use of reasonable diligence should have concluded that blasting was causing damage to its buildings by May 14, 1959. Any fair consideration of the evidence must lead to the conclusion that most, if not all, of the loss occurred far more than 91 days before any acts claimed to constitute a waiver of proofs of loss. As to such loss, clearly, there was no waiver. The plaintiff, Round Rock, bore the burden of proving its right to recover and with reasonable certainty the amount of its recovery. Admittedly, there was no way at the time of trial to tell when any of the loss had occurred. This uncertainty of proof is chargeable entirely to the plaintiff, Round Rock. Its complete failure to comply with its obligations to the insurance companies, if not as to notice, then certainly as to proof of loss, bars it from any recovery. Whether or not the reason assigned by the district court was sound, it did not err in entering judgment for the defendants notwithstanding the verdict. The judgment is

Affirmed.

HUTCHESON, Circuit Judge (specially concurring).

I concur in the results here reached, and in most of the reason put forward. I am in considerable doubt, however, about the proposition that the plaintiff bore the burden of proving the time of the loss in connection with its assertion of waiver. My opinion, that under the

Texas authorities the evidence relied upon by the plaintiff could not support the jury's finding of waiver, makes it unnecessary to further examine the question of burden of proof. Provident Fire Ins. Co. v. Ashy, 139 Tex. 334, 162 S.W. 2d 684 (1942).