**ST. PAUL MERCURY INSURANCE COMPANY, et al., Appellants,**

**v.**

**TRI–STATE CATTLE FEEDERS, INC., Appellee.**

No. 9299.

Court of Appeals of Texas, Amarillo.

Feb. 16, 1982.

First Rehearing Denied Feb. 16, 1982 with Opinion Withdrawing Prior Opinion.

Second Rehearing Denied March 9, 1982.

Stokes, Carnahan & Fields, Robert N. Carnahan, Amarillo, for appellants.

Gibson, Ochsner & Adkins, James H. Doores, Amarillo, for appellee.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

## ON MOTION FOR REHEARING

COUNTISS, Justice.

The prior opinion of the court is withdrawn and this opinion is issued in lieu thereof. This is a suit on an insurance policy issued by appellants St. Paul Mercury Insurance Co. and National Union Fire Insurance Co. as co-insurers (hereafter collectively referred to as "St. Paul") to appellee Tri-State Cattle Feeders, Inc. (hereafter "Tri-State"). The questions presented by St. Paul's seven points of error are whether: (1) Tri-State gave proper notice and proof of loss; (2) the loss was covered by the policy; (3) the trial court abused its discretion in granting Tri-State's motion for new trial after the first trial of this case; (4) the trial court submitted the controlling issues in the case and (5) the trial court improperly excluded evidence. We affirm.

On January 15, 1975, St. Paul issued the insurance policy in question to Tri-State, a commercial cattle feeder. The policy insured cattle fed for others by Tri-State against certain named perils while the cattle were in or within 200 feet of Tri-State's feed lot near Hereford, Texas. The other provisions of the policy pertinent to this case read as follows:

2. PERILS INSURED:

This policy insures (except as hereinafter excluded) against:

\* \* \* \* \* \*

11. Theft, but excluding escape or mysterious disappearance.

\* \* \* \* \* \*

13. NOTICE OF LOSS AND ADJUSTMENT:

a. The named insured shall by telephone or in writing report ... WITHIN 24 HOURS every loss which may become a claim under this policy.

\* \* \* \* \* \*

d. The named insured agrees to file with the company or its agent, within ninety (90) days from the date of loss, a detailed sworn statement of proof of loss and provide the original purchase price of the cattle if requested to do so by the company.

The loss in question here was caused by the activities of a cattle buyer named Don Leonard. Leonard was working for various commercial meat packing companies as an order buyer, purchasing cattle from feed lots for the packers and receiving a commission for his work. Leonard was also speculating in the cattle market on his own and by August of 1975 had incurred substantial financial losses. He was attempting to cover his losses by purchasing cattle, re-selling them immediately and using the proceeds to cover checks already outstanding on his account. On August 5, 1975, Leonard purchased 138 head of cattle from the Tri-State feed lot. The feed lot manager believed Leonard was purchasing the cattle as an order buyer but Leonard was, in fact, purchasing them for himself. The cattle were loaded at the feed lot onto trucks furnished by Leonard and a portion of them were sold for slaughter the same day to a packer in Plainview, Texas. Immediately after the cattle were delivered to Leonard a draft dated August 5, 1975, in the sum of approximately $55,000, was prepared by Tri-State on Leonard's cattle account in a Levelland bank and forwarded to Tri-State's bank in Amarillo. The Tri-State manager testified that the draft was drawn at Leonard's direction. A few days later, before the Tri-State draft reached his account, Leonard suffered a disabling heart attack and was unable to maintain the cash flow essential to his scheme.

When the draft drawn by Tri-State on Leonard's account was presented for payment, it was dishonored. However, the evidence indicates that Tri-State was not immediately aware of the nature or extent of Leonard's financial difficulties. Tri-State made various unsuccessful attempts to collect the sum owed to it and eventually learned that it was one of ten feed lots that had incurred losses of over $500,000.00 as a result of Leonard's scheme. Leonard was indicted for theft of Tri-State's cattle under section 31.03 Tex.Penal Code Ann. (Vernon 1974) on November 16, 1976. He plead guilty to the charge and was placed on ten years probation on May 25, 1977.

Tri-State gave written notice of its loss to St. Paul on January 8, 1976. St. Paul has consistently refused to pay the claim. It relies primarily on the failure of Tri-State to give notice of the loss or file a sworn proof of loss within the time required by the policy, but also contends the loss was not theft as contemplated by the policy.

The first trial of this case resulted in a verdict favorable to St. Paul, but Tri-State contended by appropriate motion that jury misconduct occurred. After a hearing, the trial court granted a new trial without assigning any reason for its action. The second trial produced the verdict and judgment favorable to Tri-State that is now before this court. The jury found that Leonard had committed theft of 138 cattle in Tri-State's care and that the animals were located at or within 200 feet of the feed lot. The jury also found that the 24 hour notice provision and the 90 day proof of loss provision were unreasonable under the circumstances, that Tri-State gave notice within a reasonable period of time after the loss and that St. Paul waived and excused Tri-State's failure to file sworn proof of loss. Judgment in favor of Tri-State was rendered on the verdict and this appeal resulted.

By its first point of error, St. Paul contends it is entitled to judgment as a matter of law because Tri-State did not give notice of the loss within 24 hours or file written proof of loss within 90 days, as required by the policy. St. Paul also contends that Tri-State failed to give notice or proof of loss within a reasonable time after discovery. We do not agree.

Article 5546 states, as pertinent here:

(a). No stipulation in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable. Any such stipulation fixing the time within which such notice shall be given at a less period than ninety (90) days shall be void, and when any such notice is required, the same may be given to the nearest or to any other convenient local agent of the company requiring the same.

\* \* \* \* \* \*

Tex.Rev.Civ.Stat.Ann. art. 5546(a) (Vernon Supp.1980).

■ This statute applies to "notice of claim for damages" provisions in contracts of insurance. *Texas Farm Bureau Mutual Insurance Co. v. Carnes*, 416 S.W.2d 863, 869 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.); *See: Round Rock Independent Sch. Dist. v. First National Ins. Co.*, 324 F.2d 280, 284 (5th Cir. 1963); 32 Tex. Jur.2d *Insurance* § 367 (1962). We construe the 24 hour notice provision in the policy before us to be a "notice of claim for damages" requirement. As such, it is void under the foregoing statute. The absence of a valid notice provision invokes a reasonable notice standard of not less than 90 days. *International Brotherhood, Etc. v. Huval*, 140 Tex. 21, 166 S.W.2d 107, 112 (1942); *Bankers Reserve Life Co. v. Springer*, 81 S.W.2d 756, 760 (Tex.Civ.App.—El Paso 1935, writ ref'd). The jury having found, in an unchallenged finding, *Dallas Railway & Terminal Co. v. Straughan*, 254 S.W.2d 882, 884 (Tex.Civ.App.—Amarillo 1952, no writ) that Tri-State gave notice within a reasonable time, Tri-State is not barred from recovering on the policy by its failure to comply with the void 24 hour notice requirement. We also observe that the 24 hour notice provision is ambiguous. There is nothing in the clause stating when the 24 hour period begins. An ambiguous clause in an insurance policy is to be strictly construed in favor of the insured. *Fruhman v. Nawcas Benevolent Auxiliary*, 436 S.W.2d 912 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.). For that additional reason, we cannot say that appellee's recovery is barred by the 24 hour requirement.

■ The ninety day proof of loss requirement likewise does not bar recovery. It is clear under Texas law that a proof of loss requirement in a policy can be waived by the insurer. *Aetna Casualty and Surety Company v. Clark*, 427 S.W.2d 649, 657–658 (Tex.Civ.App.—Dallas 1968, no writ). The jury found, again in an unchallenged fact

finding binding on this court, *Dallas Railway & Terminal Co. v. Straughan*, 254 S.W.2d 882, 884 (Tex.Civ.App.—Amarillo 1952, no writ), that St. Paul excused and waived the proof of loss requirement. Thus, it cannot bar Tri-State's recovery in this case. Point of error one is overruled.

■ By St. Paul's third and fourth points of error it contends the transaction by Leonard was not, as a matter of law, theft within the meaning of the policy. The policy does not define theft. Therefore, the term is given the same meaning it has under the criminal law of Texas. *Hudiburg Chevrolet, Inc. v. Globe Indemnity Co.*, 394 S.W.2d 792 (Tex.1965); *Allstate Insurance Co. v. Dykes*, 461 S.W.2d 519 (Tex.Civ.App. —Tyler 1971, writ ref'd n. r. e.). Under our criminal law, theft can take the many forms set out in chapter 31 of the Texas Penal Code. One form of theft occurs when a person deprives the owner of property without the owner's effective consent. Tex.Penal Code Ann. § 31.03(a)(b) (Vernon 1974). Effective consent is lacking if the owner's consent is given but is induced by deception or coercion. Tex.Penal Code Ann. § 31.01(4) (Vernon 1974). Thus, if Leonard obtained the cattle in question with the owner's permission, but obtained that permission by deception, he committed theft under the criminal law and under the policy.

■ There is ample evidence in the record before us that Leonard was guilty of theft. Two items of evidence are illustrative and fatal to St. Paul's contention. First, Leonard was indicted for and plead guilty to the theft of the cattle in question under the Penal Code provisions discussed above. The criminal conviction is not conclusive evidence of theft in a civil suit on the policy, but it is certainly persuasive evidence. Second, Tri-State's manager testified Leonard led him to believe the cattle were being purchased by Leonard as an order buyer for a packer. Had this been true, the manager testified, Leonard's purchase would have been supported by the packer and there would have been little danger of monetary loss. If the manager had known Leonard was purchasing the cattle for himself, different and more secure financial arrangements would have been required. From this evidence it would be proper to conclude that the cattle were obtained by deception, i.e., without the effective consent of the owner.

St. Paul's primary argument is that this was not a theft case because the cattle were not given to Leonard in a contemporaneous exchange for the draft in question. Instead, the cattle were loaded on Leonard's trucks and shipped out of the feed lot without cash in hand. Later that day, according to Tri-State's evidence, Leonard authorized the drawing of the draft. Thus, says St. Paul, a debtor-creditor relationship existed, the debt was not lost by the dishonored draft, and no crime was committed. See, e.g., *Colin v. State*, 145 Tex.Cr.R. 371, 168 S.W.2d 500 (1943).

St. Paul's argument is pertinent to a theft by check offense under section 31.06, Tex.Penal Code Ann. (Vernon 1974). The theft theory upon which Tri-State relies, however, is the broader form of theft using a deception under section 31.03, discussed above. Under that section, a debtor-creditor relationship between Leonard and Tri-State is not a defense, especially if the relationship was created by deception. Points of error three and four are overruled.

By its seventh point of error St. Paul states that the trial court erred in not admitting evidence of the meaning of theft as understood in the insurance industry and by the parties. St. Paul has not referred us to anything in the record that establishes the offer and exclusion of such evidence. Likewise, there is no evidence of that nature before us by bill of exception or in any other form that would permit us to pass on the significance of the alleged error. Thus, point of error seven presents nothing for review, *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980) and is overruled.

■ Under its second point of error, St. Paul contends the trial court abused its

848

discretion by granting a new trial to Tri-State after an adverse jury verdict in the first trial of this case. Like the preceeding point, this point presents nothing for review. The appellate courts of this state do not review the action of the trial court in granting a new trial unless (1) the trial court's order is wholly void or (2) the new trial was granted on the specific ground, stated in the order, that the jury's answers to the special issues were conflicting. *Johnson v. Court of Civil Appeals*, 162 Tex. 613, 350 S.W.2d 330, 331 (Tex.1961); *Stephenson v. Boyer*, 479 S.W.2d 355, 357 (Tex.Civ.App. —Amarillo 1972, no writ); *M. W. Fruit Co. v. Bierbauer*, 216 S.W.2d 831, 835 (Tex.Civ. App.—San Antonio 1948, writ ref'd n. r. e.). Neither requirement is met in this case. Point of error two is overruled.

■ St. Paul's fifth point of error is based on the proposition that there was no theft "within 200 feet of the feed yards" as required by the policy. So far as this record reflects, the cattle were delivered to Leonard's agent at the feed yard. It was at that point, as discussed above, that Leonard obtained actual possession of the cattle without the effective consent of Tri-State. Thus, the theft occurred at the feed yard. *Knapp v. State*, 504 S.W.2d 421, 424 (Tex. Cr.App.1973). Point of error five is overruled.

By its sixth point of error, St. Paul contends, without supporting authority, that no controlling issues were submitted to the jury for determination. A controlling issue has been defined as "a question which inquires as to the truth of a proposition of fact which constitutes ... a ground of recovery or of defense, and which, when answered, would have an effect on the judgment." *Atchison, Topeka & Santa Fe Railway Co. v. Mahon*, 473 S.W.2d 598, 609 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). The ultimate issues in this case were whether a theft of the cattle occurred within the terms of the policy and whether Tri-State was barred from recovery by its failure to comply with the policy provisions on notice and proof of loss. Those were the exact issues submitted to the jury, in a form consistent with Rule 279, Tex.R.Civ.P. Point of error six is overruled.

The motion for rehearing is overruled. The judgment of the trial court is affirmed.