**UNITED STATES of America,**
**Plaintiff,**

**v.**

**ONE 1966 FORD FAIRLANE CONVERT-**
**IBLE, Serial Number 6H44S103107,**
**Defendant.**

**Civ. A. No. 66-767.**

United States District Court
D. South Carolina,
Columbia Division.

Oct. 12, 1967.

Terrell L. Glenn, U. S. Atty., Charles Porter, Asst. U. S. Atty., Columbia, S. C., for plaintiff.

George M. Stuckey, Jr., Bishopville, S. C., for claimant, James Edward Gilbert.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

DONALD RUSSELL, District Judge:

The Government filed its complaint in this case alleging that "on September 1, 1966, Special Investigators of the Alcohol and Tobacco Tax, Internal Revenue Service, * * * did seize * * * in Lee County, South Carolina, * * * as for-

feited to the United States, certain property, to wit: One 1966 Ford Fairlane Convertible, Serial No. 6H44S103107, * * * which vehicle was used on August 30, 1966, in Lee County, South Carolina, for the deposit and concealment of one case, or more, of one-pint bottles of rubbing alcohol, the said rubbing alcohol, being raw materials intended to be used for and in the manufacturing of distilled spirits, whereon a tax is imposed by the laws of the United States, which tax had not been paid nor was the same to be paid." The claimant, James Edward Gilbert, answered denying that said motor vehicle was subject to forfeiture.

In compliance with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

## FINDINGS OF FACT

Investigators of the Alcohol and Tobacco Tax Unit apprehended and observed over a period of three days the operation of an illegal still in the edge of a wooded area, inside a fenced-in pasture, a short distance from County Road 186 in Lee County, South Carolina. As a result of such observation, Robert Meyers, Henry Lee Harris and James Edward Gilbert were identified as working about such still at various times.

Opposite the pasture was a house frequented from time to time by those working about the still. The investigators kept such house under observation. About 9:45 a. m. on August 30, 1966, James Edward Gilbert drove up to the house in the car which is the subject of this action. He was observed by one of the investigators on look-out to walk to the rear of the house. The investigator was blocked by the car in his view of Gilbert and was unable to see whether he carried anything with him at the time. He did observe Gilbert then return to his car, open the trunk and remove a cardboard box therefrom. Gilbert was seen carrying the card-board box to the chimney at the end of the house, bending down

and then returning to his car without the box. He thereupon got into his car and, after looking toward the still, drove away.

About an hour later, Harris was seen to come out of the woods where the still was, walk to the house, go around to the chimney, bend down; and when he arose, he was seen carrying a box identified by the investigator as identical with the one he had seen Gilbert carry around to the chimney an hour earlier. Harris took the box with him back to the woods where the still was.

Gilbert himself returned to the house about two hours later. He went around the house out of the view of the investigators and returned immediately carrying a card-board box identical in appearance to the one which the investigators had observed Gilbert to remove from his car earlier that day. Gilbert was seen carrying it into the woods where the still was. Shortly thereafter, Meyers, Harris and Gilbert came out of the woods and rode off in the car which is the subject of this action.

Between the time Gilbert drove up to the house early on the morning of August 30, and that when Meyers, Harris and Gilbert were seen riding off in the car in question, the house was kept under close observation. Other than for the movements set forth above, no activity was seen about the chimney of the house. The investigator's point of observation gave him a good view of the house.

After Meyers, Harris and Gilbert left, the investigators went down into the woods, found the still, determined it had been operated, and located approximately 50 gallons of non-tax-paid distilled spirits in a large barrel. They observed in the distillery yard empty bottles of Davis rubbing alcohol. They found two cardboard boxes, identical in appearance to the one taken from the trunk of the automobile in question by Gilbert and to those the investigators had seen brought from the house to the still by Harris and Gilbert. The boxes were labeled as con-

taining "Davis Brand" rubbing alcohol and empty bottles apparently taken from the cartons and labeled as "Davis Brand" rubbing alcohol were found about the still.

The investigators continued their observation of the still until the next day when they confiscated about 100 gallons of illegal whiskey, found at the still. There was no sign posted to indicate that the distillery had been registered as required by law, and none of the containers of the distilled spirits bore stamps to indicate the payment of tax on the contents, as required by law.

Random samples of the 100 gallons of illegal whiskey found at the distillery showed that it contained 1.94 per cent by volume of isopropyl alcohol. Isopropyl alcohol is not produced by distillation. The use of isopropyl alcohol to "stretch" illegal whiskey is a known practice of bootleggers.

The only evidence submitted by the claimant James Edward Gilbert was represented in two statements from the Clerk of Court and the Sheriff of Lee County. The Clerk of Court certified "that the records in the Office of the Clerk of Court for Lee County, South Carolina, show no prior convictions of James Edward Gilbert." The Sheriff certified that "to my knowledge he (Gilbert) has never been convicted, arrested, or charged with any crime." Gilbert himself never testified.

## CONCLUSIONS OF LAW

■ While the Government has the burden of establishing the grounds for forfeiture in an action under 26 U.S.C.A. §§ 7301, 7302, it satisfies such burden with the preponderance of the evidence. United States v. One 1955 Mercury Sedan (C.C.A. 4, 1957) 242 F.2d 429, 430; Anderson v. United States (C.C.A. 5, 1950) 185 F.2d 343, 345; United States v. Bryan, (C.C.A. Fla., 1959) 265 F.2d 698, 701. And the decision in One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania (1965) 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170, while holding that proceedings for forfeiture are quasi-criminal, did not alter the rule as to degree of proof required in such cases. One 1961 Lincoln Continental Sedan v. United States, (C.C.A. 8, 1966) 360 F.2d 467, 469.

■ Chemical analysis of the illegal whiskey confiscated at the still showed the addition thereof of isopropyl alcohol. The record adduced by the Government, though circumstantial, amply justifies the inference that the claimant, using the car sought to be forfeited, transported in the boxes deposited at the house and later taken to the still the isopropyl alcohol used in "stretching" the whiskey being manufactured at the illegal still. See, United States v. Raybon, (C.C.A. 4, 1966) 268 F.2d 321, 322. This evidence the claimant made no effort to rebut save with certificates to the effect that he had no prior record of distilling and had no criminal record of any kind. The weight to be given such evidence was greatly weakened by the clear and undisputed testimony showing the claimant's involvement in the operation of this still. His failure to offer any evidence to rebut that submitted by the Government leaves this Court no option but to conclude as the Government testimony establishes, i. e., that the automobile involved herein was engaged in the transportation of property used in the illegal manufacture of whiskey and subject to forfeiture, under Sections 7301 and 7302, 26 U.S.C.A. See, United States v. One 1955 Mercury Sedan, (C.C.A. 4, 1957) 242 F.2d 429, 431; Stagner v. United States, (C.C.A. 5, 1952) 197 F.2d 992, 994.

Let counsel submit proposed decree for entry of judgment.