FOREMOST COUNTY MUTUAL INSURANCE COMPANY, Appellant,

v.

NORTH STAR DODGE, INC., Appellee.

No. 15505.

Court of Civil Appeals of Texas, San Antonio.

Oct. 13, 1976.

Appellant's Motion for Rehearing Granted Oct. 13, 1976.

Appellee's Rehearing Denied Oct. 13, 1976.

Appellee's Second Motion for Rehearing Overruled Oct. 27, 1976.

Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

A. W. Worthy, Gresham, Davis, Gregory, Worthy & Moore, San Antonio, for appellee.

KLINGEMAN, Justice.

Our opinion of July 21, 1976 is withdrawn. In such opinion we reversed and remanded the judgment of the trial court for a new trial. Both appellant and appellee filed motions for rehearing. After due consideration, we have concluded that the judgment should be reversed and rendered. Our previous opinion is withdrawn and the following substituted in lieu thereof.

This is an insurance coverage case. On April 11, 1972, plaintiff, North Star Dodge, Inc., put its Dodge motor home into the possession of Joaquin Contreras after the execution of a seven-day rental agreement. Subsequently, the motor home was damaged when it overturned carrying illegal aliens near Paul's Valley, Oklahoma, and was thereafter returned in a damaged condition to plaintiff within the seven-day period. Defendant, Foremost County Mutual Insurance Company, was the insurer for plaintiff under a certain "COMBINATION AUTOMOBILE POLICY NO. KT261–3504131," which was introduced into evidence. Plaintiff brought suit in the District Court of Bexar County, Texas, alleging that Contreras obtained and appropriated the motor home through fraudulent means, and sought recovery against defendant on the policy under theft and collision coverages. Defendant denied liability for the loss and specially pleaded two policy exclusions.

Trial was to a jury with only two special issues being submitted. In Answer to Special Issue No. 1, the jury found that Contreras acquired possession of the motor home in question by theft by false pretext; and, in answer to Special Issue No. 2, the jury found that the reasonable and necessary cost of repair to the motor home was $8,221.67. Judgment was entered for plaintiff in that amount. Defendant filed motions for judgment, judgment n.o.v., to disregard the jury's answers to special issues, and a new trial, each of which was overruled.

Defendant asserts seventeen points of error. Eight of Defendant's points of error complain that the trial court erred in failing to grant defendant's motion for judgment. All of these points of error are "no evi-

dence," or "legal insufficiency" points of error. Four points of error complain that the trial court erred in failing to grant defendant's amended motions for new trial. Two of defendant's points of error complain that the trial court erred in refusing to submit certain requested special issues. Three points of error complain that the trial court erred in admitting into evidence certain exhibits.

The relevant policy provisions here involved read as follows:

Coverage E—Collision or Upset. To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto.

Coverage G—Theft (Broad Form). To pay for loss of or damage to the automobile, hereinafter called loss, caused by theft, larceny, robbery or pilferage.

The exclusions plead by defendant read as follows:

(o) under coverages D and G, to loss due to conversion, embezzlement or secretion by any person in possession of the automobile under a bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance;

(r) under coverages D, E, F, G, H, I and J, while the automobile is used in any illicit trade or transportation.

The pertinent evidence may be summarized as follows: A rental agreement between plaintiff and Contreras was introduced into evidence wherein the motor home was rented to Contreras for a seven-day period, which period covered the time the loss occurred. The record contains a copy of a receipt showing payment of the rental amount by Contreras.

The manager of plaintiff's motor home and leasing department testified that he was contacted by Contreras about leasing a motor home, and that Contreras signed the rental agreement in his presence. He further testified that Contreras told him he was going to Minnesota to see his family and would use the home approximately seven days. He stated that Contreras had a big wad of money with him, and that when he signed, he paid the rental in cash. He testified that the next time he saw the vehicle was approximately a week later when it was pulled into the lot by a wrecker; it had been turned over; and, there was extensive damage. The vehicle was returned within the seven-day period.

Albert A. Blackway, a witness for plaintiff, testified that he was an investigator with the U.S. Immigration and Naturalization Service. He testified that Contreras was under investigation with regard to the smuggling of illegal aliens; in connection with such investigation he received a call from an agent in Laredo in April 1972, and went to the Star Motel in San Antonio, which had also been under investigation. At such motel he found about twenty illegal aliens, but did not find Contreras. He testified that Contreras had been operating an illegal smuggling ring out of Mexico and had operated in the San Antonio area for a period of about three years; Contreras had a highly sophisticated smuggling ring.

Plaintiff introduced into evidence as plaintiff's exhibits 4, 5, and 6, certified copies of records of federal district court proceedings, which included excerpts from testimony of Joaquin Contreras and a man named Casteneda. Plaintiff asserted such exhibits were properly admissible as declarations against interest by witnesses who were unavailable for the trial here involved, and were declarations admitting criminal conduct and against their pecuniary interests. In one of such exhibits, Joaquin Contreras admitted that he used a 1972 Dodge motor home rented from a San Antonio dealership to transport Jesus Parra Casteneda, who entered the United States illegally on April 7, 1972, from San Antonio to Chicago, and that this motor home was involved in an accident near Paul's Valley, Oklahoma.

Another exhibit consisted of the testimony of Jesus Parra Casteneda. He testified

that he entered the United States illegally in April 1972, and that he escaped arrest during a raid by law enforcement officers at the Star Motel in San Antonio. He testified that he arranged with Contreras for his transport to Chicago and paid Contreras for such services; the vehicle in which he started for Chicago was "a truck with a house;" the motor home was turned over in the state of Oklahoma; and, the motor home in which he was being transported had about twenty illegal aliens in it. Plaintiff introduced such evidence and does not complain of its admissibility on appeal.

The body shop manager of plaintiff testified as to the damages and cost of repair of the motor vehicle. He testified that he examined such vehicle after it had been returned and that it had been turned over and was in bad shape. He stated that he had made an estimate of the cost of repairs, which estimate was introduced as an exhibit, and that the amount of $8,221.67, shown in the exhibit as cost of labor and material and other items dealing with the repair of the vehicle, was the reasonable and customary charge in Bexar County for those types of repairs. He further testified that someone had built a fire in the back underneath one of the bunks which had caused damages to the motor home, but that he did not know specifically what amount was necessary to repair the damages done by the fire.

It is settled that where an insurer specifically pleads the exclusions set forth in the policy, the issue of coverage is raised, and the insured has the burden of proving that his loss is not attributable to the pleaded excluded hazards. *Travelers Indemnity Company v. McKillip*, 469 S.W.2d 160 (Tex. 1971); *Texas Employers' Insurance Association v. Jones*, 393 S.W.2d 305 (Tex.1967); *Sherman v. Provident American Insurance Co.*, 421 S.W.2d 652 (Tex.1967).[1]

We have concluded that the judgment should be reversed and rendered for the following reasons: (1) As a matter of law, the policy in question excluded coverage for the loss. (2) There is an absence of fact findings necessary for a judgment for plaintiff. (3) As a matter of law, the loss occurred through collision or upset while the motor home was being used in an illicit trade or transportation. (4) There is no evidence to support the jury's finding that Contreras obtained the motor home through theft by false pretext.

Under the pleadings and the record, it was incumbent upon plaintiff (1) to produce evidence and secure findings that the loss was covered by an insured peril; (2) to negative the exclusions contained in the policy as specifically plead by defendant.[2]

To constitute theft by false pretext, it must be established that the property was obtained by false pretext with an intent on

1. In *Sherman v. Provident American Insurance Company, supra*, the Court said:

    On the point of conflict as to the burden of proof, the Court of Civil Appeals . . . has correctly decided that the burden of proof was on the plaintiffs to negative the exclusions and limitations contained in the policy and pleaded as a defense by defendant's answer.

    In *Travelers Indemnity Co. v. McKillip, supra*, the Court said:

    The insurance company pleaded the specific exclusion of loss by snowstorm set out in the policy. This pleaded exclusion thus raised the issue of coverage. The insureds had the burden to prove that their loss was not attributable to the pleaded excluded hazard. *Sherman v. Provident American Ins. Co.*, 421 S.W.2d 652 (Tex.1967); *Hardware Dealers Mut. Insurance Co. v. Berglund*, 393 S.W.2d 309 (Tex.1962); Rule 94 T.R.C.P.

    Travelers having plead the exclusion under the policy of loss by snowstorm, the insureds were obligated to introduce evidence to prove and secure jury findings that the damage was caused solely by the windstorm, an insured peril; or segregating the damage caused by the insured peril from that caused by the snowstorm, an excluded peril. This construction of the exclusionary clause is well settled in Texas. *Coyle v. Palatine Ins. Co.*, Tex.Com.App., 222 S.W. 973 (1920); *Hardware Dealers Mut. Ins. Co. v. Berglund*, supra; *Paulson v. Fire Ins. Exchange*, 393 S.W.2d 316 (Tex.1965).

2. It appears from appellee's motion for rehearing and briefs that it does not rely on the collision or upset coverage provisions of the lease, but rather on the theft coverage provision.

the part of the taker to deprive the owner of the value of the property and appropriate it to the use or benefit of the taker. It must be shown that such intent existed in the mind of the taker at the time he acquired possession of the property. An intent subsequently formed is insufficient. 55 Tex.Jur.2d, *Theft* § 1535–36 (1964).

There is no evidence in the record before us showing or tending to show that at the time the vehicle was delivered to Contreras he did not intend to return it to plaintiff according to the terms of the lease agreement. Consequently, there is no evidence that will support the jury's finding of theft by false pretext.

Under the terms and provisions of the policy, any loss due to collision or upset was excluded if the loss occurred while the vehicle was being used in an illicit trade or transportation. This exclusion applied to various coverages, including theft.

The evidence not only failed to show that the exclusion was inapplicable, but it established conclusively that at the time of the collision the vehicle was being used for the illegal purpose of transporting aliens unlawfully present in this country. Under the clear terms and provisions of policy, appellee was not entitled to recover. Appellee is entitled to a judgment as a matter of law.

Appellee's motion for rehearing is overruled. Our previous opinion and judgment is withdrawn, and the judgment is reversed and here rendered that plaintiff, North Star Dodge, Inc., take nothing by its suit.