Odette CHERTOK, Plaintiff,

v.

HOTEL SALISBURY, INC. and Calvary Baptist Church, Defendants.

HOTEL SALISBURY, INC. and Calvary Baptist Church, Third-Party Plaintiffs,

v.

FEDERAL INSURANCE GROUP and Chubb Group of Insurance Companies, Third-Party Defendants.

No. 80 Civ. 3488.

United States District Court, S. D. New York.

June 24, 1981.

Braunstein, Jacobson, Freeman & Viscomi, New York City, for plaintiff.

Rovegno & Taylor, Forest Hills, N. Y., for defendants.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

Plaintiff Chertok has sued the defendants for failing to provide a safe place in which to keep jewels, and for refusing to accept plaintiff's jewelry for safekeeping. Amended Complaint ¶¶ 7–9. Plaintiff further alleges that, after defendant hotel had failed and refused to care for her jewelry, and while she was a guest at the hotel, her jewelry was "stolen and lost to plaintiff because of the neglect and failure of the defendants to provide a safe in which such jewelry could be kept and in failing to have adequate security in the hotel to guard and protect the room and property of plaintiff while she was absent therefrom." *Id.* ¶ 11. The loss, plaintiff claims, was $47,445, which she demands with interest and costs.

Defendants asked their insurer to defend this action, but after some delay the insurer refused. Defendants then sued the insurer, Federal Insurance Group ("FIG"), for indemnity and to compel them to provide a defense. The court allowed this third-party action for reasons of fairness and economy. Defendants have now moved for summary judgment on their claim that FIG must defend plaintiff's action. Although the motion was initially filed on the basis of defendants' second and fourth causes of action against FIG, the Court permitted defendants to base their motion on their claim that the insurance policies create a suffi-

cient possibility of liability to require FIG to provide a defense. *See* Third-Party Complaint ¶¶ 5–8. FIG has been afforded an opportunity to address the motion as revised, and has done so in affidavits filed June 15, 1981 and June 19, 1981. Defendants' claim of estoppel is meritless and, on FIG's motion, is dismissed.

Under New York law, an insurer's commitment to defend claims made against the insured extends to lawsuits which are "on their face within the compass of the risk against which insurance was taken, no matter how groundless, false or baseless those suits may be." *Goldberg v. Lumber Mutual Casualty Ins. Co.*, 297 N.Y. 148, 154, 77 N.E.2d 131, 134 (1948). The carrier is relieved of its commitment to defend only if, as a matter of law, there is no possible ground upon which the insurer might eventually be held obligated to indemnify under any provision of the policy. *Monari v. Surfside Boat Club, Inc.*, 469 F.2d 9, 13 (2d Cir. 1972); *J.G.A. Construction Corp. v. Charter Oak Fire Ins. Co.*, 66 A.D.2d 315, 318, 414 N.Y.S.2d 385, 387 (4th Dep't 1979).

The policy covering defendants is one of comprehensive liability, extending to "bodily injury, property damage or personal injury arising out of the ownership, maintenance or use of the premises . . .," in this case, a hotel and church. Form 33–02–130 (Ed. 12–74), effective Oct. 1, 1978. FIG agreed to pay all covered claims. The limit of liability for property damage is $100,000 for each "occurrence." Form 33–02–46 (Rev. 12–74), effective Oct. 1, 1977. More pertinent to this case, however, is the Property Insurance Schedule, Form 33–02–22 (Rev. 12–74), effective Oct. 1, 1978, which expressly includes coverage of "$10,000 on personal property of others, including employees' and customers' personal property, while in the care, custody or control of the insured and for which the insured is legally liable subject to all other terms and conditions except coinsurance or reporting provisions." *Id.* at 2. It is this provision that led FIG to indicate that it would pay the insured $10,000 as representing and satisfy-

ing its liability in this case. Finally, the policy provides that, with respect to any liability it covers, "the company shall have the right and duty to defend any suit against the insured seeking damages . . . even if any of the allegations of the suit are groundless, false or fraudulent. . . ." Form 33–02–46, at 1.

■ Third-party defendant FIG argues that the policy and its amendments contain no applicable provision for defense. The obligation to defend, however, extends to "property damage"; and that term is defined to include "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." Form 33–02–63 (Rev. 12–74), Glossary, at 12. Plaintiff expressly claims that she lost the use of tangible property; and an occurrence is defined simply as an "event" that causes the requisite damage. *Id.* at 11. Therefore, the commitment to defend is applicable here, unless no possible basis for coverage can be found.

FIG argues that no coverage conceivably exists because the personal property covered was not in the "care, custody or control" of the insured. Plaintiff alleges that the jewelry was taken from her room in the hotel. The policy can reasonably be construed to treated property of guests in hotel rooms as being under the "care" of the hotel, in that hotels are required to care reasonably for the security of their premises. Furthermore, property in the rooms of guests can reasonably be said to come under the "control" of the hotel for certain purposes, such as the need to secure any property that might pose a danger or the right to exclude persons other than the guests involved from access to the property.

Finally, FIG argues that coverage is expressly excluded by the policy because it does not cover loss caused by or resulting from "burglary or hijack of furs, gems, watches, precious metals or alloys." Form 33–02–50 (Rev. 12–74), at 1, ¶ 13. This exclusion would clearly be inapplicable to the plaintiff's claim if the word "burglary" is given either its common law meaning or its

meaning under New York law. A person commits a burglary under New York law only if he enters or remains unlawfully upon a premises, which in turn occurs only if he is not licensed or privileged to do so. N.Y.Penal Law § 140.00(5) (McKinney Supp.1980–81). For this reason, the Practice Commentary concludes: "A person who is licensed or privileged to enter a building cannot, therefore, commit burglary under the Revised Penal Law, if, upon entering, he resolves to commit a theft or other crime in the building." *Id.* (McKinney 1975) at 15. The loss alleged in this case could well have been the result of conduct that would not constitute any form of burglary in New York.

FIG notes, however, that the policy itself defines burglary to mean: "the unlawful taking and carrying away of personal property with intent to deprive the rightful owner of the same." Form 33–02–63 (Rev. 12–74), at 1. To accept this definition at face value, however, would tend to read the $10,000 loss-of-personal-property coverage out of existence. Furthermore, if the policy intended to cover all unlawful takings of property, it could (and should) simply have said so, without using the term-of-art "burglary" and then confusingly attempting to give that word an unfamiliar meaning. Rather than assume such purposes, the Glossary definition of burglary can (and should) be read consistently with its commonly accepted use. The definition can reasonably be read to incorporate in the use of the words "unlawful taking" the concepts traditionally associated with "burglary," particularly since the term "unlawful" otherwise has no meaning and serves no purpose. An insurer must, in fairness and to avoid uncertainty, adopt particularly clear language to negate a term of art it chooses to use, when the word has important consequences in the trade or industry covered by the policy.

■ Even if the clause in question were held to preclude liability for losses of personal property through all thefts (not merely through those amounting to burglaries), a duty to defend would still exist in this

case. Plaintiff has stated her claim in terms of the hotel's failure to provide a safe place to store her jewelry, and alternatively in terms of the hotel's failure to provide adequate security. The latter claim sounds in negligence: plaintiff is blaming the defendant, not for the theft, but rather for failing to take steps required under New York law to lessen the likelihood of thefts. Under this view of the policy, even a loss by burglary could be covered, so long as defendant's negligence was also a proximate cause of the loss; burglaries that occurred without any negligence of the defendant would remain excluded. The insurance company vociferously asserts that no such construction could be adopted, but its position is more heated than convincing. Such a construction is logically defensible and recognizes the need for, and expectation of, coverage for innkeeper conduct that falls short of long-established legal standards.

Defendant's motion for summary judgment requiring FIG to defend is granted. Fed.R.Civ.P. 56(a).

SO ORDERED.