United States Court of Appeals,

Fifth Circuit.

No. 91–2085.

SNUG HARBOR, LTD., et al., Plaintiffs–Appellees,

v.

ZURICH INSURANCE, Defendant–Appellant.

Aug. 18, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and KENT, District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

This peal involves a claim for coverage brought by Snug Harbor, Ltd. (Snug Harbor) under a comprehensive general liability (CGL) insurance policy issued by Zurich Insurance Company (Zurich). Snug Harbor alleges that (1) Zurich's insured—First South Savings Corporation (First South)—mishandled a petition and citation which were to be served on Snug Harbor, thereby causing a default judgment to be entered against Snug Harbor in Texas state court, and (2) the mishandling of this citation and petition constitutes "property damage" for purposes of the CGL policy. Following trial, the district court entered judgment in favor of Snug Harbor in the amount of $2,230,000. We reverse and render judgment in favor of Zurich.

I

On October 15, 1985, while at his home in a condominium project owned by Snug Harbor, Stephen Campbell was stabbed by a Snug Harbor employee. Seeking remedy for his injuries, Campbell brought suit in Texas state court in January 1986 against Snug Harbor, its general partner Claude Williams, and others connected with the property.

---

[*]District Judge of the Southern District of Texas, sitting by designation.

On the same day notice of Campbell's suit was allegedly[1] served on Snug Harbor, First South—holder of a mortgage on the Snug Harbor property—held a foreclosure sale and took possession of the Snug Harbor premises. Snug Harbor asserts that, as a result of First South taking possession of its premises, it never received a copy of the *Campbell* petition and citation which, pursuant to Rule 106 of the Texas Rule of Civil Procedure, should have been left at "the defendant's usual place of business." Snug Harbor never responded to Campbell's suit, and a default judgment was entered against it on June 12, 1986 in the amount of $500,000 plus post-judgment interest.

In August 1987, Snug Harbor brought suit in Texas state court against (1) Zurich,[2] (2) Essary, Hart & MacWilliams, Inc. (Essary),[3] and (3) First South. Snug Harbor later amended its petition, limiting its action to claims for negligence and breach of fiduciary duty based on First South's failure to forward the *Campbell* petition and citation to Snug Harbor. In February 1990, First South made several demands on Zurich to assume its defense and pay the *Campbell* default judgment.[4] Zurich formally refused to defend First South on April 13, 1990, asserting that (1) Snug Harbor did not suffer "property damage" within the meaning of the CGL policy; (2) even if Snug Harbor did suffer property damage under the policy, such damage was not caused by an occurrence within the policy period; and (3) any coverage otherwise applicable was excluded by the policy's "care, custody, and control" exclusion clause.

During these proceedings, First South was placed in conservatorship; the Federal Savings and

---

[1] Zurich asserts that Snug Harbor's general partner was personally served, and that a copy of the petition and citation was also left with a Snug Harbor employee.

[2] At the time of the stabbing, Snug Harbor owned a CGL policy issued by Zurich. This policy provided coverage for liability due to "bodily injury" and "property damage" up to $500,000 per occurrence. *See infra* notes 9–10 and accompanying text (quoting the policy). A few weeks after First South took possession of Snug Harbor, First South added itself to the Zurich policy, effective January 25, 1986. First South canceled this policy on April 9, 1986.

[3] Essary is the broker responsible for selling the Zurich policy to Snug Harbor.

[4] *See supra* note 2 (summarizing how First South added itself to the Zurich policy).

Loan Insurance Corporation (FSLIC) was appointed conservator and the Federal Deposit Insurance Corporation (FDIC) was appointed manager. The FSLIC and the FDIC intervened as defendants, removed the case to federal court, and the Resolution Trust Corporation (RTC) replaced the FSLIC as conservator. Thereafter, the case was whittled down to the dispute now before us: The district court dismissed claims against the FDIC and RTC with prejudice, and Snug Harbor and Campbell settled with Essary for $807,000 and with First South for $700,000.[5] Snug Harbor also took an assignment of First South's cross-claim against Zurich in which First South alleged that Zurich had breached a duty to defend in accordance with the CGL policy.

Following trial, the district court instructed the jury that Zurich had a duty to defend First South and asked the jury to determine whether Zurich's failure to defend was a bad faith breach of that duty. Finding that Zurich had acted in bad faith and with reckless disregard in failing to defend First South, the jury returned a verdict against Zurich and awarded First South $30,000 in attorney's fees and $1,500,000 in punitive damages.[6] The district court entered judgment in accordance with the jury verdict, and Zurich filed a Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial—a motion the district court denied. Modifying its earlier judgment, the district court then entered judgment in favor of Snug Harbor and against Zurich for (1) $30,000 in attorney's fees, (2) $1,500,000 in exemplary damages, and (3) $700,000 in actual damages—the full amount of the First South settlement. Zurich appeals.

## II

Zurich raises the following contentions:

(a) the district court erred in submitting the issue of coverage to the jury;

---

[5]In return for this settlement with First South, Snug Harbor and Campbell released their claims against First South and agreed to never enforce a judgment against First South and in their favor.

[6]The jury also found that Snug Harbor's claim was a covered claim for property damage and that the policy's care, custody or control exclusion does not apply.

(b) the district court erred in holding that Zurich had a duty to defend First South;

(c) the district court erred in failing to conclude that, as a matter of law, Zurich did not breach its duty of good faith and fair dealing; and

(d) the district court erred in awarding damages.

A

Zurich contends that, as a matter of law, Snug Harbor's claim against First South was not covered by the Zurich-issued policy because (1) the only loss Snug Harbor could have suffered was loss of notice of the *Campbell* suit—a loss that does not constitute "property damage" for purposes of the Zurich policy, and, (2) even if this alleged misplacement of the *Campbell* citation and petition is construed as "property damage," it did not occur during the policy period. Therefore, Zurich asserts, the district court erred by submitting this question to the jury.

The question before us is one of contract interpretation. We review such questions de novo unless they arise from ambiguity in the language of the contract. *See Carpenters Amended & Restated Health Benefit Fund v. Holleman,* 751 F.2d 763, 766 (5th Cir.1985).[7] Therefore, to the extent that the language within an insurance policy is coherent and the parties' intent is clear from that language, our standard of review is de novo. *See Holleman,* 751 F.2d at 766 ("As long as the contract as a whole is coherent, ambiguities can be resolved as a matter of law, without looking beyond the four corners of the document."). We find that the language within the Zurich-issued policy is unambiguous[8] and, therefore, our standard of review is de novo. *Id.*

1

---

[7]*See also Pierre v. Conn. Gen. Life Ins.,* 932 F.2d 1552, 1561 (5th Cir.) (citations omitted), *cert. denied,* ⸺ U.S. ⸺, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991):

> Generally, contract interpretation is reviewed under a *de novo* standard; a reviewing court does not defer to the lower court's interpretation of the contract as long [as] the interpretation looks to the four-corners of the contract. Once, however, the lower court goes beyond the boundaries of the written document to make determinations of fact, its findings are subject to a deferential standard.

[8]*See infra* notes 9–10 and accompanying text.

The Zurich-issued policy provides CGL insurance coverage for property damage,[9] which the policy defines as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.[10]

Snug Harbor asserts that i ts loss of the use of the *Campbell* citation and petition constitutes such property damage. We disagree.

Whether the mishandling of a legal document leading to the entry of a default judgment constitutes "property damage" for CGL insurance purposes is a question of first impression.[11] Nevertheless, the volumes of case law interpreting "property damage" provide us with guidance. *See generally* 1A ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE (1992) § 10.05 (titled *Bodily*

---

[9]The Zurich-issued policy provides, in pertinent part:

### I. COVERAGE—BODILY INJURY AND PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

Record Excerpts of Appellant Zurich Ins. Co. at tab 5, *Snug Harbor Ltd. v. Zurich Ins. Co.,* No. 91–2085 (5th Cir. filed June 5, 1991) ["Record Excerpts"].

[10]*Id.*

[11]The only case that approaches being legally "on-point" was recently decided by a California court. *See Aim Ins. v. Culcasi,* 280 Cal.Rptr. 766, 229 Cal.App.3d 209 (Cal.Ct.App.1991). The *Aim* court addressed whether an employer's failure to forward an employee's insurance application papers—which caused economic injury when the requested coverage was not in place—constituted "property damage." After noting that the employee had waived this claim on appeal, the court stated, "this claim is frivolous. The alleged loss or destruction of a piece (or pieces) of paper [the employee] entrusted to [the employer] represents trivial, if not nonexistent, property damage." *Id.* at 776, 229 Cal.App.3d at 227.

*Injury or Property Damage* ).  Courts generally have interpreted "property damage" to require (1) actual damage to tangible property or (2) the loss of use of property with tangible monetary value.[12] Courts have also held that purely economic losses—for example, loss of the use of money a claimant would have received but for the insured's negligence—do not constitute "the loss of use of tangible property."[13]

Snug Harbor—bearer of the burden of establishing that the claim against it falls within the coverage provided by the Zurich-issued policy[14]—relies upon *Lay v. Aetna Ins.,* 599 S.W.2d 684

---

[12]*See, e.g., Chertok v. Hotel Salisbury,* 516 F.Supp. 766, 768 (S.D.N.Y.1981) (where hotel refused to care for guest's jewelry, stolen jewelry constitutes "tangible property" triggering duty to defend under CGL policy);  *Travelers Ins. v. DeBothuri,* 465 So.2d 662, 663 (Fl. Dist. Ct.App.1985) (stolen personal property constitutes "loss of use of tangible property" for purposes of CGL policy).  Courts have also found the "loss of use of tangible property" where a party has lost the use of real property, even though that property has not been physically damaged.  *See, e.g., American Motorists Ins. v. The Trane Co.,* 544 F.Supp. 669, 682–83 (W.D.Wis.1982) (occurrence causing gas liquefaction plant to shut down constitutes a loss of use of tangible property), *aff'd,* 718 F.2d 842 (7th Cir.1983).

[13]*See, e.g., Liberty Bank v. Travelers Indem.,* 870 F.2d 1504, 1508–09 (9th Cir.1989) (economic loss to lenders stemming from loss of subordination in security promised by bank is not property damage);  *McCollum v. Insurance Co. of N. Am., 1* 32 Ariz. 129, 644 P.2d 283, 286 (Ariz.Ct.App.1982) (lost profits do not constitute property damage);  *Giddings v. Industrial Indem.,* 112 Cal.App.3d 213, 169 Cal.Rptr. 278, 281 (Cal. Ct.App.1980) ("To construe the explicit words "tangible property' to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence to the plain language of the policies.");  *see also* LONG, *supra,* § 10.05 (footnotes and citations omitted):

> The following have been found to be outside the definition of property damage:  a claim for a negligent termite inspection resulting in diminution of the value of the home;  a claim for the amounts paid to customers in refunds when defective tennis rackets were returned;  a breach of the warranty of fitness of an automobile which resulted in a diminution of value;  and misrepresentations made by the insured sellers concerning an easement on the property purchased by the claimants.

[14]*See American Home Assur. v. Brandt,* 778 S.W.2d 141, 143 (Tex.App.—Texarkana 1989, writ denied) ("Once an insurer pleads an exception to the insurance policy coverage, the burden then shifts to the insured to show that the occurrence did not fall within the exception or exclusion of the policy.");  *Foremost County Mut. Ins. v. North Star Dodge,* 542 S.W.2d 270, 273 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.) ("Under the pleadings and the record, it was incumbent upon plaintiff (1) to produce evidence and secure findings that the loss was covered by an insured peril;  (2) to negative the exclusions contained in the policy as specifically plead by defendant.") (footnote omitted);  *see also Round Rock Indep. Sch. Dist. v. First Nat'l Ins.,* 324 F.2d 280, 286 (5th Cir.1963) ("The plaintiff, Round Rock, bore the burden of proving its right to recover and with reasonable certainty the amount of its recovery.").

(Tex.Civ.App.—Austin 1980, writ ref'd n.r.e) (action brought against insured for negligent location of oil well), as authority for its proposition that the *Campbell* petition constitutes lost tangible personal property under the CGL policy. Specifically, Snug Harbor relies upon the *Lay* court's statement that " "[t]angible property' is commonly understood to be property that is capable of being handled or touched." *Id.* at 686 (citations omitted). Our reading of *Lay* is much broader than this statement—that is, Snug Harbor overlooks the fact that the *Lay* court, after making this statement, went on to hold that purchase of an assignment of drilling rights and payment of attorney and surveyor fees do not constitute injury to, destruction of, or loss of use of tangible property. *Id.* The court held that, rather, "[t]he purchase of the assignment was an economic transaction involving the exchange of money for the privilege of drilling and producing oil." *Id.*

The *Campbell* petition and citation had no intrinsic value or use beyond notifying Snug Harbor that legal action had commenced against it. The substantive loss resulting from the alleged mishandling of this documentation is loss of that notice, which resulted in a default judgment.[15] We find that, as a matter of law, such a loss does not constitute a "property loss" for CGL policy purposes.[16]

---

[15]The record before us contains no indication that Snug Harbor ever moved to have the default judgment against it set aside. *Cf. Matsushita Elec. v. McAllen Copy Data,* 815 S.W.2d 850, 853 (Tex.Ct.App.—Corpus Christi 1991, writ denied) (district court erred in granting default judgment against corporation where no notice of default hearing was given to corporation or its counsel of record); *Lorentzen v. Kliesing,* 810 S.W.2d 16, 19 (Tex.Ct.App.—Houston [14th Dist.] 1991, no writ) (defendant entitled to set aside default judgment and new trial where she did not receive notice of default judgment), *quoting Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Com.App.1939, no writ):

> [a] default judgment should be set aside and a new trial ordered in any case in which the failure of defendant to answer was not intentional, or the result of conscious indifference on his part, but was due to a mistake or accident; provided a motion for new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

[16]Snug Harbor's claim against First South is similar to "errors-and-omissions" (E & O) claims of negligence. Errors and omissions policies exclude damage to tangible property but cover damages sustained as a result of an act or omission—for example, claims made against professionals and business entities where one party receives notice for another and fails to properly or timely forward that notice:

Zurich also asserts that there was no "occurrence"[17] during the policy period because the alleged misplacement of the *Campbell* petition and citation occurred two weeks before First South added itself to the Zurich-issued policy and did not become apparent until after default judgment was entered on June 12, 1986—over two months after First South canceled the Zurich policy.  We agree.

Texas courts have concluded that the time of an "occurrence" is when a claimant sustains actual damage—not necessarily when the act or omission causing that damage is committed.  *See, e.g., Dorchester Dev. Corp. v. Safeco Ins.,* 737 S.W.2d 380, 383 (Tex.App.—Dallas 1987, no writ).[18]

---

> An errors-and-omissions policy is professional-liability insurance providing a specialized and limited type of coverage as compared to comprehensive insurance;  it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes and errors inherent in the practice of the professions....

7A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4504.01 (Berdal ed.1979) (footnotes and citations omitted);  *see Fort Pierre v. United Fire & Cas.,* 463 N.W.2d 845, 847 (S.D.1990) (citation omitted) ("Errors and omissions policies are a hybrid form of insurance coverage.  It guards against losses arising to the insured, as well as liabilities arising on the part of the insured, by reason of errors or omissions.");  *Grieb v. Citizens Cas.,* 33 Wis.2d 552, 148 N.W.2d 103, 106 (1967) (defining E & O policies);  *see, e.g., Holt v. Utica Mut. Ins.,* 157 Ariz. 477, 759 P.2d 623, 625 (1988) (en banc) (underlying action involved insurance agent accepting premiums but failing to procure automobile liability coverage);  *Passanante v. Yormark,* 138 N.J.Super. 233, 350 A.2d 497, 501 (1975) (insurer liable under E & O policy for claims against attorney for negligent performance of duties), *cert. denied,* 70 N.J. 144, 358 A.2d 191 (1976);  *Otteman v. Interstate Fire & Cas.,* 172 Neb. 574, 111 N.W.2d 97, 98 (1961) (underlying action involved insurance agent failing to process insurance renewal for customer and question of liability under E & O policy resulted).  Accordingly, we find that Snug Harbor's action against Zurich is essentially an E & O claim, and, despite Snug Harbor's efforts to recast this action, we conclude that it does not fit into the CGL mold.

[17]The Zurich-issued insurance policy provides that:

> "occurrence" means an accident, including continuous or repeated exposure to conditions, which results in property damage, neither expected nor intended, from the standpoint of the insured.

Record Excerpts at tab 5.

[18]Where the underlying policy contained language requiring an "occurrence" during the policy period essentially identical to that in the Zurich-issued policy, the *Dorchester* court held that "no liability exists on the part of the insurer unless the property damage manifests itself, or becomes apparent, during the policy period." *Id.* at 383.

This is an approach adopted by the majority of courts. *See, e.g., Blue Streak Indus. v. N.L. Indus.,* 650 F.Supp. 733, 736 (E.D.La.1986) (fact that accident may be gradual process does not provide coverage under CGL policy if results of accident occur after policy has expired); *see generally,* APPLEMAN, *supra,* at § 4491.01 ("[T]he time of the occurrence of the accident within an indemnity policy is generally not considered to be the time the wrongful act was committed but the time when the complaining party was actually damaged.") (footnote and citations omitted). Although Snug Harbor's alleged loss of use of the *Campbell* citation and petition occurred during the policy period, the manifestation of that alleged loss did not.[19]

3

We have found that (1) the alleged misplacement of the Campbell petition does not constitute a property loss for the purposes of the Zurich-issued CGL policy and, (2) even if we were to construe it as such, it does not constitute an occurrence during the policy period.[20] Therefore, we conclude that, as a matter of law, Snug Harbor's claim against First South was not covered by the Zurich-issued policy—that is, no "conflicting inferences can be drawn from [the evidence]" and no reasonable person could have found that the Zurich-issued policy covered Snug Harbor's claim.[21] Accordingly,

---

[19]It follows from Snug Harbor's contention that it was deprived of an opportunity to defend itself that, had misplacement of the *Campbell* petition and citation manifested itself during the policy period, Snug Harbor would have defended itself and there would have been no default judgment entered against it. Therefore, it is self-evident from the default judgment that the manifestation of Snug Harbor's alleged loss did not occur during the policy period. Moreover, the record before us indicates that Snug Harbor made no effort to have the default judgment set aside. *See supra* note 15.

[20]Zurich also contends that the policy's care, custody or control exclusion bars coverage. This exclusion provides that the policy "does not apply to property damage to property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Record Excerpts at tab 5. Because we find that Zurich's "no property" and "no occurrence" contentions are decisive, we do not reach this issue.

[21]Our conclusion is based upon the deeply-settled standard for determining whether there is sufficient evidence to create a jury question: "The judge must determine whether the evidence is sufficiently in conflict to permit differing views concerning disputed issues of fact and, whether, even if the evidence is not contradicted, conflicting inferences can be drawn from it." *Atchison, Topeka and Santa Fe v. Sherwin–Williams,* 963 F.2d 746, 749 (5th Cir.1992), *quoting Johnson v. William C. Ellis & Sons Iron Works,* 604 F.2d 950, 958 (5th Cir.1979) (citations omitted). "Where a question has been submitted to a jury, the evidence is sufficient to support the jury's

we find that the district court erred in submitting this issue to the jury.

B

Zurich also contends that the district court erred in holding that it had a duty to defend First South. We agree.

An insurer's duty to defend is expansive—that is, "[i]f any allegation in the complaint is even *potentially* covered by the policy[,] then the insurer has a duty to defend its insured." *Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1492 (5th Cir.1992) (emphasis added); *cf. Old Republic Ins. v. Comprehensive Health Care,* 786 F.Supp. 629, 631 (N.D.Tex.1992) ("Texas rules of interpretation construe insurance policies in favor of the insured.") (citations omitted). Nevertheless, this duty is not limitless: Although the outer boundary of a policy's potential coverage may be expansive, an insurer's duty to defend ceases there. *See Old Republic,* 786 F.Supp. at 631, 632–33 (holding that insurers had no duty to defend where claims were based upon alleged intentional acts that did not constitute "occurrences"); *Fidelity & Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787, 788 (Tex.1982);[22] *Thornhill v. Houston Gen. Lloyds,* 802 S.W.2d 127, 130 (Tex.App.—Fort Worth 1991, no writ) (holding that insurer had no duty to defend suit against insureds alleging negligence in sale of intoxicating liquor where policy language excluded such coverage); *T.C. Bateson Const. v. Lumbermens Mut. Cas.,* 784 S.W.2d 692, 700 (Tex.App.—Houston [14th Dist.] 1989, writ denied) ("The allegations in the petition are not at issue here, and having found no

---

finding if—taking all evidence and all reasonable inferences that can be drawn from that evidence in favor of the finding—a reasonable person could have made such a finding." *Sherwin–Williams,* 963 F.2d at 749 (footnote and citation omitted).

[22]The *McManus* court held that:

> An insurer is required to defend only those cases within the policy coverage. Furthermore, the insurer is entitled to rely on the plaintiff's allegations in determining whether the facts are within the coverage. If the petition only alleges facts excluded by the policy, the insurer is not required to defend.

*McManus,* 633 S.W.2d at 788 (citations omitted).

ambiguity in the provisions of the policy, we find no duty to defend.").[23]

In determining whether an insurer had a duty to defend, we look to the face of the pleadings.[24] "The insurer is under a legal duty to defend if, and only if, the petition alleges facts construing a cause of action within the coverage of the policy." *Maryland Cas. v. Mitchell,* 322 F.2d 37, 39 (5th Cir.1963) (footnote omitted).[25] We have concluded that the allegations in Snug Harbor's Second Amended Complaint[26] constitute neither property damage nor an occurrence during the

[23]This court has held in accordance with this general principle under Louisiana law. *See Selective Ins. v. J.B. Mouton & Sons,* 954 F.2d 1075, 1078–79 (5th Cir.1992) (holding that insurer had no duty to defend where complaint did not allege "property damage" within meaning of the policy); *Fidelity & Guar. Ins. Underwriters v. City of Kenner,* 894 F.2d 782, 784 (5th Cir.1990) ("[I]f the allegations of the plaintiff's petition unambiguously exclude coverage, the insurer is not obligated to furnish a defense.") (footnote and citations omitted).

[24]*See Feed Store, Inc. v. Reliance Ins.,* 774 S.W.2d 73, 74–75 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (citation omitted):

> In ascertaining the scope of a duty to defend, courts should look to the language of the policy and the allegations in the complaint against the insured.... Under this analysis we cannot consider anything outside (a) the policy and (b) the pleadings, even if there is evidence tending to show the suit is utterly specious. The effect of this "eight corners rule" is to minimize uncertainty in assessing a liability insurer's duty, as well as to favor the insured in cases where the merits of the action may be questionable.

> *See also, Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 918 (Tex.App.—Fort Worth 1988, writ denied) ("An insurer is required to defend only those cases within the policy coverage.... Pleadings and terms of the policy determine an insurer's duty to defend.") (citations omitted).

[25]*See also Fidelity & Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787, 788 (Tex.1982) ("[A]n insurer is required to defend only those cases within the policy coverage.... If the petition only alleges facts excluded by the policy, the insurer is not required to defend."); *Mary Kay Cosmetics v. North River Ins.,* 739 S.W.2d 608, 612 (Tex.App.—Dallas 1987, no writ) ("If ... the petition only alleges facts excluded by the policy, the insurer is not required to defend."); *Gonzales v. American States Ins.,* 628 S.W.2d 184, 186 (Tex.App.—Corpus Christi 1982, no writ) (before duty to defend is triggered, complaint must make some allegation covered by the policy).

[26]Snug Harbor's Second Amended Complaint alleges that:

> Immediately after the [Campbell] petition and citation was served upon Snug Harbor, First South deprived Snug Harbor of possession and use of its tangible personal property, part of which was the citation and petition relative to the "Campbell claim."

Zurich policy period.[27]  Although Zurich's duty to defend is greater than its duty to indemnify,[28] we find that Snug Harbor's claim falls well over the fence encircling potential liability under the Zurich-issued policy.  We conclude, therefore, that Zurich had no duty to defend First South.

C

According to Zurich, the district court erred in concluding that Zurich breached a duty of good faith and fair dealing by refusing to defend First South.  We agree.

A finding of bad faith cannot be premised solely on the breach of a contractual duty, such as the duty to defend.  *See United Servs. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 783 (Tex.App.—San Antonio 1991, writ denied) (breach of implied covenant of good faith and fair dealing must be based on breach of legal duty, such as negligent handling of claim, the existence of which is independent of the contract between the parties); *see also Employers Nat'l Ins. v. Zurich Am. Ins.,* 792 F.2d 517, 520–21 (5th Cir.1986) (where court applied Texas law, setting aside finding of bad faith premised on wrongful refusal to defend) (noting that Texas courts would follow majority rule that mere failure to defend will not support bad faith finding).  Moreover, "delays or refusal to pay are not unreasonable where there is a legitimate question of policy construction." *National Union Fire Ins. v. Hudson Energy,* 780 S.W.2d 417, 427 (Tex.App.—Texarkana 1989), *aff'd,* 811 S.W.2d 552 (Tex.1991); *see also Plattenburg v. Allstate Ins.,* 918 F.2d 562, 563–64 (5th Cir.1990) (where evidence shows justifiable reason existed for action of insurer, action cannot, as matter of law, constitute bad faith).  Because Snug Harbor's claim of bad faith is an appendage to its assertion that Zurich breached a contractual duty to defend[29]—a duty we have found to be nonexistent,[30] we find

---

Record Excerpts at tab 6.

[27]*See supra* Parts II.A.1–3.

[28]*See Enserch Corp.,* 952 F.2d at 1493 ("It is axiomatic insurance law that the duty to defend is broader than the duty to indemnify or pay.").

[29]Snug Harbor asserts on appeal that Zurich's failure to settle its claim constitutes bad faith. Snug Harbor did not properly raise this issue below, as is evidenced by the fact that it was never

that it is without merit.[31]

## D

Finally, Zurich challenges the district court's judgment against it in the amount of $2,230,000—a judgment consisting of $30,000 in attorney's fees, $1,500,000 in exemplary damages, and $700,000 to fully cover the First South settlement with Snug Harbor. Because we have found that, as a matter of law, Snug Harbor's claim against First South was not covered by the Zurich-issued insurance policy and that Zurich had no duty to defend First South, we conclude that the district court's award against Zurich is unsupported.

## III

For the foregoing reasons, we REVERSE the district court's judgment in favor of Snug

---

submitted to the jury. The only interrogatory submitted to the jury setting out the standard for a finding of bad faith concerned Zurich's alleged failure to defend:

> [O]ne of the issues that has been contested in this case is whether Zurich Insurance Company had an obligation to provide First South Savings with a defense in this case.
>
> Based upon the evidence and my interpretation of the contract of insurance, I have determined that Zurich owed that duty to defend as a matter of law. Therefore, you will not be required to deliberate on that question. However, you are required to answer various other questions regarding the evidence in this case as follows:
>
> > Number One: Do you find that the Zurich Insurance Company failed to act in good faith and fair dealing with its insured, First South Savings Association, by refusing to defend the Snug Harbor claim?

Record on Appeal, vol. 1, at 123, 143, *Snug Harbor Ltd., v. Zurich Ins.,* No. 91–2085 (5th Cir. filed Apr. 1, 1991).

[30]*See supra* Part II.A.

[31]Zurich wraps its challenge to the district court's judgment of bad faith with a string of alleged trial errors—specifically, that (1) improper district court comments amounted to an improper directed verdict, (2) the district court improperly instructed the jury that Zurich owed a fiduciary duty to First South, and (3) the district court compounded its allegedly harmful instructions by allowing improper attorney/expert opinions. Having found that Zurich had no duty to defend First South and that Snug Harbor's claim of bad faith is without merit, we do not reach these issues.

Harbor and RENDER JUDGMENT in favor of Zurich.

KENT, District Judge, concurring in part and dissenting in part.

I agree with the majority that the trial court erred in concluding that Zurich breached its duty of good faith and fair dealing by refusing to defend First South. Otherwise, I would affirm the trial court in all respects, and I must therefore respectfully dissent.

My departure from the majority begins with the order of consideration of the two remaining issues. The majority first concludes that Snug Harbor's claim against First South was not covered by the policy, and then easily concludes that Zurich had no duty to defend First South. In other words, because the majority *now* concludes, after the fact, that Snug Harbor's claim was not covered, it also concludes that Zurich's refusal to defend was reasonable, given the information available to Zurich at the time it made this decision.

This approach begs the question. Obviously, at the time Zurich decided not to defend First South, Zurich did not have the benefit of this decision. Moreover, as the issue of whether the mishandling of a legal document constitutes "property damage" under a CGL policy is one of first impression, there was little if any case law available to guide Zurich's decision.[1]

Under Texas law, an insurer's duty to defend its insured is much broader than its duty to indemnity. While the insurer is bound to pay only those claims that are in fact covered by the policy, it must defend its insured against all claims that are potentially covered. *Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1492–93 (5th Cir.1992). Moreover, an insurer will not be held

---

[1]The cases relied on by the majority concern instances where an insurer refused to defend a claim that was clearly not covered given the express terms of the policy. *See, e.g., Fidelity & Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787 (Tex.1982); *Thornhill v. Houston Gen. Lloyds,* 802 S.W.2d 127 (Tex.App.—Fort Worth 1991, no writ). Such is not the case here.

liable for denying coverage if its denial was based on a reasonable and legitimate, although erroneous, construction of the policy,[2] but it will be held liable for the breach of its duty to defend unless it can demonstrate that, after resolving all doubts in favor of the insured, a reasonable person could have concluded that there was a reasonable basis to refuse to defend the claim. *Enserch Corp.,* 952 F.2d at 1492. Applying these standards to the facts of the instant case, I conclude that Snug Harbor's claim was at least potentially covered by the Zurich policy.

More than forty years after the invention of the computer, the notion that information alone may constitute property is no longer a novel one. Indeed, at oral argument, Zurich agreed that the loss of a computer disc could constitute property damage for purposes of a CGL policy. Zurich's counsel asserted, however, that the loss of a computer disc or a document would only constitute property damage if the information contained therein has some uniform market value that is the same for all individuals—such as a trade secret. The majority apparently agrees stating that

> [t]he *Campbell* petition and citation had no intrinsic value or use beyond notifying Snug Harbor that legal action had commenced against it. The substantive loss resulting from the alleged mishandling of this documentation is loss of that notice, which resulted in a default judgment. We find that, as a matter of law, such a loss does not constitute a "property loss" for CGL policy purposes.

While there is much to be said for this argument, I am not entirely persuaded. In my view an argument can be made that, in a particular case, the loss of a document may constitute property damage if the information contained in that document had some identifiable value to the document's owner or intended recipient, even though the information contained in the document has no market value.

Arguably there is little difference between a person who is deprived of a document containing a trade secret or the like and a person who is deprived of a document containing information which is valuable to him given his particular circumstances, although it may be of little value to others. For

_____

[2]*See, e.g., Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988).

example, the purchaser of a machine may receive a document that explains how to start and operate the machine. This information may be of little interest to those who do not own such machines and may not have a market value—the information may be available in library books and the manufacturer may be willing to provide a duplicate copy at no charge if the original is lost. If the machine's owner is deprived of the document while out on a job site far from libraries and FAX machines, however, he will certainly suffer a loss, and, to my mind at least, it is difficult to distinguish this loss from the loss suffered by one who loses a document containing a trade secret or the like. Certainly a market exists for trade secrets, while one does not for the document in the hypothetical; but this is not, to my mind, a meaningful distinction. In both instances, the owner has been deprived of valuable information. The fact that no market exists for the information lost by the machine owner in no way lessens or diminishes his loss. Nor does the existence of a market for trade secrets somehow transmogrify the document containing the trade secret into property: while no market exists for the machine owner's document, he would probably be willing to pay a great deal for its return in the circumstances hypothesized above.

Similarly there is arguably little difference between the petition and citation in this case and those types of documents the loss of which everyone agrees would constitute property damage under a CGL policy. Although information contained in a petition and citation may be of little value to one who is not a party to the lawsuit, it is normally quite valuable to the party that has been sued. If the party filing a lawsuit were not required by law to notify the party being sued, surely those entities that are sued repeatedly would be willing to pay some private firm to gather and disseminate this information.

All this is not to say that the majority's conclusion that Snug Harbor's loss was not covered by the policy is not correct. However, the question is whether, at the time Zurich declined to defend First South, First South's claim was potentially covered by the policy. In my view, the arguments the majority uses to support its conclusions that Zurich had no duty of coverage only serve to highlight

the fact that First South's claim was at least potentially covered by the policy.

Similarly, although I find the majority's arguments persuasive, I must also respectfully dissent from the majority's conclusion that Snug Harbor's loss was not covered by the Zurich policy. Although this issue is governed by Texas law, the question has never been addressed by any Texas court. Moreover, there is no suggestion that any improper evidence was received or that Plaintiff–Appellee's counsel engaged in improper jury argument or other untoward conduct. Under such circumstances, I do not think an appellate court should be so willing to set aside the hard work of this seasoned and thoughtful trial court on the ground that no reasonable jury could have reached the conclusion that a jury did, in fact, reach. This is especially true where, as here, the appellate decision does not settle or clarify a broad issue of law. In my view, today's decision is a narrow one: unless and until the Texas Supreme Court says otherwise, the loss of a document such as a petition and citation will not constitute property damage under a CGL policy. Beyond this, I do not think that this decision settles or clarifies any significant aspect of insurance law. Rather, I think that this decision will only serve to encourage insurers not only to deny coverage but also to refuse to defend their insureds even in the face of potential liability and an absolute dearth of legal authority supporting such refusals.

In my view, with the exception of the submission of the bad faith issue to the jury,[3] the trial judge and jury did an excellent job under difficult and trying circumstances. Despite an absence of authority for such a result, the majority chooses to disregard the work of a remarkably conscientious trial court and to substitute its own judgment. Therefore, save and except for the bad faith issue, I would affirm the trial court in all respects, and I must therefore respectfully dissent.

---

[3]This was only a minor error. While a finding of bad faith may not be based solely on the breach of a duty to defend, a jury may find that an insurer breached its duty of good faith and fair dealing by refusing to provide coverage or by failing to determine whether it was reasonable to deny coverage. *State Farm Mutual Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 597 (Tex.App.—Beaumont 1991, writ denied). Thus, instead of asking the jury whether Zurich's failure to defend was a breach of its duty of good faith and fair dealing, the trial court should have asked whether Zurich's failure to provide coverage was a breach of its duty.