IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20006

Summary Calendar

_____


AMERICAN HOME ASSURANCE COMPANY,

                                    Plaintiff-Counter Defendant
                                    Appellee,

                    versus

UNITRAMP LIMITED and
UNITRAMP, S.A.,

                                    Defendants-Counter
                                    Claimants-Appellants.



_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-95-522)
_____

June 20, 1996

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

    Unitramp Limited and Unitramp, S.A. appeal the judgment of the

U.S. District Court declaring that American Home Assurance Company

owes them no indemnity for losses they incurred in a shipping

_____

    [*]Local Rule 47.5 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion
should not be published.

mishap. They further appeal the district court's award of attorneys' fees to American Home. We vacate the district court's judgment and remand for further proceedings.

## I.

Unitramp was the time charterer of the M/V Glenita, a general cargo vessel owned by Ugland. On June 8, 1993, Enjet Refining, Inc. delivered 450 tons of fuel to the M/V Glenita at Enjet's Ingleside facility near Corpus Christi, Texas. Unitramp ordered that the fuel be kept in segregated bunkers while a laboratory analysis of the fuel was performed. The M/V Glenita departed for Mobile, Alabama on June 9. In Mobile, the ship took on a cargo of coal. The M/V Glenita departed Mobile on June 13, 1993 bound for Casablanca.

On June 14, 1993, while the M/V Glenita was at sea, Unitramp received the report of the laboratory analysis of the fuel. The report disclosed an unacceptably high level of water in the fuel. Ugland informed Unitramp that the fuel could not be used. Unitramp directed the M/V Glenita to proceed to Tampa, Florida, where Enjet refueled the ship.

Unitramp sued Enjet for losses it incurred as a result of the delay caused by the need to refuel the M/V Glenita. Enjet filed for bankruptcy while the Unitramp suit was pending, but the bankruptcy court lifted the automatic stay and permitted Unitramp to continue prosecuting its lawsuit against Enjet. Unitramp and Enjet subsequently settled the dispute for $210,000.

Unitramp then sought to recover its judgment from Enjet's insurer, American Home. American Home had issued Galveston Terminal, Inc. a comprehensive liability policy effective from June 12, 1992 to noon on June 12, 1993. The policy named Enjet as an additional assured and covered liability arising from operations at scheduled locations. Enjet's Ingleside facility was not one of those covered locations. American Home renewed the policy. The renewed policy was effective as of noon on June 12, 1993 and covered Enjet's Ingleside facility.

Both policies defined an "occurrence" as:

> an event or a continuous or repeated exposure to conditions which unintentionally, from the standpoint of the Assureds, causes injury, loss, damages or destruction during the policy period. Any number of such injuries, damage or destruction resulting from a common cause or from exposure to substantially the same conditions shall be deemed to result from one occurrence.[1]

The policies further provided that "[o]perations or products in existence prior to the inception of this policy which cause or result in bodily injury or property damage during the policy period are covered by this policy."

American Home sued Unitramp, seeking a declaratory judgment that it owed Unitramp no indemnity under its policies. Unitramp counterclaimed, seeking a declaration to the contrary. The crux of the litigation centered on when the covered "occurrence" happened:

---

[1] The renewal policy omits the term "loss" from this definition. The parties do not contend that the difference in policy language affects this appeal.

when the fuel was loaded on board the ship or when Unitramp discovered that the fuel was unacceptable. The district court agreed with American Home that, under the terms of the policy, liability attached at the time of the causative event, not at the time damage was discovered. Since Enjet delivered the bad fuel at a time when American Home's policy did not cover Enjet's Ingleside facility, no coverage existed. The district court awarded American Home declaratory relief and, subsequently, $7,750 in attorneys' fees.

## II.

On appeal, Unitramp argues that, under Texas law, an "occurrence" is not when the act causing the damage is committed, but rather when the damage from that act is actually sustained. According to Unitramp, it did not sustain any damage until it discovered that the fuel was bad, that is, on June 14, 1993 when the M/V Glenita was at sea.

In Snug Harbor, Ltd. v. Zurich Ins., 968 F.2d 538, 544 (5th Cir. 1992), we observed that "Texas courts have concluded that the time of an occurrence is when a claimant sustains actual damage-- not necessarily when the act or omission causing that damage is committed." See Dorchester Development v. Safeco Ins., 737 S.W.2d 380, 383 (Tex. App.--Dallas 1987, no writ); Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co., 852 S.W.2d 252, 257 (Tex. App.--Dallas 1993, writ denied). In this case, the district court held that liability attaches at the time of the causative event.

4

Although we are inclined to agree with the district court's reading of the policy language, both Texas courts and this circuit have construed similar policy language as requiring an analysis of when the damage manifested itself.

We therefore VACATE the district court's judgment and REMAND for a determination of when Unitramp sustained actual damage. We also VACATE the district court's award of attorneys' fees.